STATE of Wisconsin, Plaintiff-Respondent,

v.

Richard B. PASKE, Defendant-Appellant.

Supreme Court

*Nos. 90-1105-CR, 90-1106-CR, 90-1107-CR. Submitted on briefs April 24, 1991.—Decided June 25, 1991.*

(Also reported in 471 N.W.2d 55.)

For the defendant-appellant there were briefs by *Mark G. Sukowaty* and *Sukowaty Law Office,* Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Sharon Ruhly,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

DAY, J. This case is before the court on certification from the court of appeals pursuant to sec. 809.61, Stats. 1987–88. Richard B. Paske appeals from a judgment, sentence, order on motion for post-conviction relief, and second amended judgment on three consolidated cases entered by the circuit court of Sheboygan county, the Honorable L. Edward Stengel, presiding, requiring Paske to serve a ninety-five year aggregate sentence for twenty burglary convictions.

Paske entered a "no contest" plea to the twenty burglaries, and the court "read-in" eight other burglaries. In addition, the twenty burglaries were subject to an increased penalty for habitual criminality. The circuit court reviewed Paske's presentence investigation, the sentencing guidelines score sheets, and considered Paske's rehabilitative prospects, the punishment, and deterrence. The circuit court imposed twenty consecutive five-year sentences for the burglaries, totaling 100 years, consecutive to Paske's present sentence he had been serving when he was arrested.[1]

The parties briefed the issue of whether this court should adopt standards limiting the circuit court's discretion to impose consecutive sentences. The issue certified on appeal is: "whether *Solem v. Helm*, 463 U.S. 277 (1983), modifies the Wisconsin test for determining whether a particular criminal sentence constitutes cruel and unusual punishment." The Eighth Amendment to the United States Constitution provides:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

We choose not to adopt limitations on consecutive sentencing, and conclude that the principles announced in *Helm* do not apply to the facts in the case before us.

The facts of this case are undisputed. On July 26, 1989, Paske entered a plea of "no contest" to twenty counts of burglary,[2] which he had committed between

---

[1]At the time of the string of burglaries, Paske had been released on parole from the Wisconsin State Prison, where he had been serving a seven year sentence for burglary, felony theft, and felony escape. He was released on parole on July 18, 1986.

[2]Paske acted contrary to sec. 943.10(1)(a), Stats. 1987–88, which provides:

July 16, 1987, and February 3, 1989, in Sheboygan county. Eight other burglary charges were dismissed, but "read-in."

Sentencing took place on November 6, 1989, at which time the court determined that pursuant to sec. 939.50(3)(c), Stats. 1987–88,[3] each burglary was subject to a fine not to exceed $10,000, or imprisonment not to exceed ten years, or both. At the time of the commission of the burglaries, Paske had a criminal history of forty-two prior adult felony convictions, dating as far back as 1963. Paske's counsel agreed with the court's finding that Paske was a repeat offender, as defined by sec. 939.62(2), Stats. 1987–88.[4] With the repeater penalty enhancer, the maximum penalty for each burglary increased from ten years to sixteen years, making Paske

---

**Burglary** (1) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony in such place is guilty of a Class C felony:

(a) Any building or dwelling; or . . .

[3] Section 939.50(3)(c), Stats. 1987–88, provides:

**PENALTIES. Classification of felonies. . . . (3)** Penalties for felonies are as follows . . ..

(c) For a Class C felony, a fine not to exceed $10,000 or imprisonment not to exceed 10 years, or both.

[4] Section 939.62(2), Stats. 1987–88 provides:

**Increased penalty for habitual criminality. . . . (2)** The actor is a repeater if he was convicted of a felony during the 5-year period immediately preceding the commission of the crime for which he presently is being sentenced, or if he was convicted of a misdemeanor on 3 separate occasions during that same period, which convictions remain of record and unreversed. It is immaterial that sentence was stayed, withheld or suspended, or that he was pardoned, unless such pardon was granted on the ground of innocence. In computerizing the preceding 5-year period, time which the actor spent in actual confinement serving a criminal sentence shall be excluded.

56

subject to a total maximum sentence of 320 years for all twenty burglaries, sec. 939.62(1)(b), Stats. 1987–88.[5]

The court stated that it reviewed the presentence investigation, which recommended that "Mr. Paske be sentenced to a long term in the Wisconsin Prison System." The court also reviewed the sentencing guidelines score sheets, which take into account the defendant's criminal history and the severity of the offenses. Each score sheets' matrix (one score sheet per burglary) recommended a total of sixty-eight to seventy-eight months confinement, with no probation. In addition, the court received and reviewed a letter from Mrs. Paske.

The district attorney proposed that Paske be given an aggregate consecutive sentence of two hundred and forty-four years, to be served consecutively with Paske's existing sentence. The district attorney took into account, among other things, that Paske was the "ringleader" of the burglaries, which also involved other individuals; the properties Paske burglarized included a church and a widow's residence while she was attending the funeral of her late husband; and that Paske had a prior lengthy record, which demonstrated his habitual criminality.

Paske's counsel proposed that Paske be given a twenty-five year aggregate sentence, consecutive to his present sentence. Paske's counsel took into account that

---

[5]Section 939.62(1)(b), Stats. 1987–88 provides:

**Increased penalty for habitual criminality. (1)** If the actor is a repeater, as that term is defined in sub. (2), and the present conviction is for any crime for which imprisonment may be imposed (except for an escape under s. 946.42) the maximum term of imprisonment prescribed by law for that crime may be increased as follows: . . . (b) A maximum term of more than one year but not more than 10 years may be increased by not more than 2 years if the prior convictions were for misdemeanors and by not more than 6 years if the prior conviction was for a felony.

Paske was forty-four years old at the time of sentencing, and if given a lengthy sentence, he would most likely die in prison; Paske voluntarily admitted his criminal behavior, contemporaneous with his arrest, and cooperated with the authorities; he did not use a weapon or threaten or physically harm any individuals during the course of his burglaries; Paske did not steal out of enjoyment in taking other people's money, but he stole to support his cocaine habit; and calling Paske a "ringleader" was a mischaracterization.

Paske himself testified that he was sorry for what he had done, and he apologized to the crime victims and his family.

The court stated:

> I don't think I've seen anyone who is so bent on a criminal history or a life of crime as I do yourself, with perhaps the exception of one other individual.
>
> * * *
>
> When one considers the rehabilitative prospects for a forty-year-old, year-old [sic] individual who began a life of crime in 1963 who has been sentenced to the Wisconsin State Prison System on numerous occasions for crimes, breaking and entering, burglary, felony theft, armed and masked robbery, false imprisonment, it is very hard for this Court to come up with some sort of program to provide for your rehabilitative needs that you have not already had an opportunity to participate in.
>
> * * *
>
> [T]he court must focus on what is an appropriate punishment and what is an appropriate deterrence, and of those two, I don't think the deterrence is the most significant because, fortunately, in this commu-

58

nity we do not see so many individuals that come before a Court with the life-long history of criminal behavior and so many offenses. So I think in many cases the deterrent effects may very well be lost because very few individuals will find themselves in a similar situation.

\* \* \*

When we're considering over twenty burglaries with eight read-ins, that loss, regardless how you characterize it, is significant as it exists amongst the community.

\* \* \*

This court is satisfied that the only way we can provide for any possibility of your rehabilitation will be merely by virtue of longevity of incarceration. The only appropriate punishment is a lengthy sentence in the Wisconsin State Prison System. The only appropriate deterrent for you would be a similar lengthy sentence. I believe it is appropriate that each and every one of these offenses carry the same penalty and that will demonstrate to you, as I've indicated before, that each in the eyes of this Court and I believe in the eyes of this community are serious crimes and should be dealt with seriously.

\* \* \*

(Transcript of Proceedings, November 6, 1989, pp. 30–39.)

After the above considerations, the court imposed its sentence on Paske:

This Court is satisfied that with respect to each of the twenty counts of burglary that you be sentenced to the Wisconsin State Prison System for an indeter-

minate term not to exceed five years on each count and that each count shall be consecutive and not concurrent. The sentences imposed by this Court shall be consecutive to the sentence you're presently serving.

*Id.* at 39–40.

On March 30, 1990, Paske moved for post-conviction relief, providing the court with "new factors" in support of modification of sentence. These "factors" were Paske's revised dates of parole eligibility, mandatory release, and maximum discharge, since the imposition of the 100 year sentence. Paske argued that his sentence "was running all the way into the twenty-second century" and that it would have a severe effect on him. He also argued that the circuit court gave too much deference to the parole board, and that the parole board does not have as much discretion as it formerly did. In addition, Paske argued that the circuit court abused its discretion for not providing adequate reasons for the sentence length; that it did not impose reasonable time limits on consecutive sentencing; and that Paske's sentence was disproportionate to his crimes.

By order dated May 4, 1990, the circuit court modified two of the five-year terms to be served concurrently with one another, but consecutive to the remaining counts, for a total aggregate term of ninety-five years, to be served concurrently with his pre-existing sentence. The court was satisfied that the interests of justice, the protection of the public, the rehabilitative needs of Paske, and the gravity of the offenses would be adequately served and addressed with the reduced sentence.

Paske appealed, and this court accepted the case on certification. The parties were permitted, by order of this court, to submit supplemental briefs on the issue

certified and the issue concerning standards for consecutive sentences.

Paske argues first, that the circuit court abused its discretion in imposing an "excessive" ninety-five year sentence for the twenty burglaries. As this court stated in *McCleary v. State*, 49 Wis. 2d 263, 278, 182 N.W.2d 512 (1971):

> We have frequently stated that we will remand for sentencing or modify the sentence only when an abuse of discretion clearly appears. By this we mean that this court should review and reconsider an allegedly excessive sentence whenever it appears that no discretion was exercised in its imposition or discretion was exercised without the underpinnings of an explained judicial reasoning process. Where the judicial sentencing discretion is exercised on the basis of clearly irrelevant or improper factors, an abuse of discretion also results.

As for the type of sentence, concurrent or consecutive, and imposition of the penalty enhancer, this court has stated:

> As was said of a sentence under the repeater statute, sec. 973.12, Stats., a trial judge ". . . clearly has discretion in determining the length of a sentence within the permissible range set by statute." Just as clearly a trial judge has the same discretion in determining whether sentences imposed in cases of multiple convictions are to run concurrently or consecutively.

*Cunningham v. State,* 76 Wis. 2d 277, 284–285, 251 N.W.2d 65 (1977) (footnote omitted).

In both situations,

> [W]here the exercise of discretion has been demonstrated, this court follows a consistent and strong

61

policy against interference with the discretion of the trial court in passing sentence.

*McCleary,* 49 Wis. 2d at 281.

The legislature has very clearly stated that sentences for multiple convictions may be either consecutive or concurrent and that it is the sentencing court that makes the decision. Thus, the public policy has been established by the legislature. Section 973.15(2), Stats. 1987–88 provides:

> **Sentences, terms, escapes. . . . (2)** The court may impose as many sentences as there are convictions and may provide that any such sentence be concurrent with or consecutive to any other sentences imposed at the same time or previously.

The question is, does such policy meet constitutional standards in this case. Specifically, do the consecutive sentences imposed here constitute "cruel and unusual punishment." We conclude under the facts here that no constitutional violation occurred.

The three primary factors which a sentencing judge must consider are the gravity of the offense, the character and rehabilitative needs of the defendant, and the need to protect the public. *State v. Sarabia,* 118 Wis. 2d 655, 673, 348 N.W.2d 527 (1984). Additionally, the judge must consider the defendant's criminal record, his attitude and demeanor, and whether he shows remorse. *State v. Evers,* 139 Wis. 2d 424, 451–452, 407 N.W.2d 256 (1987).

In the case before the court, the circuit court judge considered the gravity of the offense, emphasizing that in the eyes of the court and the community, Paske's crimes were serious and should be dealt with seriously.

He specifically referred to the terror in the community, as a result of Paske's crimes:

> In addition to the individuals that were harmed by your conduct, the community at large suffered. A certain amount of fear and apprehension goes out amongst those who were not personally victimized. Individuals who were not victims of your crimes certainly had reason to be concerned for their safety and their security, and all this was brought about as a result of your criminal conduct.

(Transcript of Proceedings, November 6, 1989, p. 39.)

He also stated that "[w]hen we're considering over twenty burglaries with eight read-ins, that loss, regardless how you characterize it, is significant as it exists amongst the community . . .." *Id.*

In considering the character and rehabilitative needs of the defendant, the circuit court judge noted that the defendant had led a life of crime for the past twenty-five years, and that he failed in all opportunities to rehabilitate himself. In addition, he told Paske that "the amount of time that you have spent incarcerated has more than provided you an ample opportunity to rehabilitate yourself if, in fact, you have any inclination to do so whatsoever." *Id.* at 34.

As for the need to protect the public, the court recognized that "society must be and has a right to be protected from someone that will take advantage of the innocent or the defenseless or the law-abiding citizens of this community." *Id.* at 38. The court also noted that "[t]here comes a point in time when the Judges are required by our community and our State to perhaps place less emphasis on the rehabilitative needs of individuals who absolutely will not rehabilitate themselves and to place more emphasis on the protection of the

community." *Id.* at 34.[6]

The court also took into consideration Paske's forty-two prior adult felony convictions, which were listed in the sentencing guidelines score sheet, and Paske's statement to the court stating that he was sorry for what he had done.

█

The record clearly demonstrates the court's consideration of the relevant legal factors, and the imposition of sentence as a product of that consideration. The circuit court did not abuse its discretion in sentencing Paske.

Second, Paske contends that the court did not consider Paske's "new factors" concerning his parole eligibility dates in his motion for modification of sentence. Paske argues that the court gave too much deference to the parole board, and that the parole board does not have as much discretion as it formerly did, so his "long sentence is going to prevent him from ever seeing freedom again."

█

It is a matter of circuit court discretion whether a new factor justifies modification of a sentence. *State v. Franklin,* 148 Wis. 2d 1, 8, 434 N.W.2d 609 (1989). The circuit court, in considering Paske's parole eligibility date, stated:

> I am also satisfied that in view of the information provided to the Court with respect to parole eligibility dates, I think we recognize that it was the intent of the Court to provide, first of all, a sentence that would be proportionate to the offenses, [sic] the severity of the offenses, and the harm that Mr. Paske

---

[6]The weight to be attributed to each factor is within the discretion of the sentencing judge. *Cunningham v. State,* 76 Wis. 2d at 285.

and his associates inflicted upon the community and given due regard for his participation in each of the offenses, but I did also recognize during the sentence process what I believed to be the role of the Parole Board in those matters.

(Transcript of Proceedings, May 4, 1990, p. 25.)
■

In ruling on the post-conviction motion, the circuit court took into account Paske's parole eligibility date; but the court was of the opinion that even Paske's new parole eligibility date did not justify modification of Paske's sentence, considering the severity of the crime and the proportionality between Paske's sentence and his crimes. We find no abuse of discretion in the court's ruling.

Paske has also asked this court to adopt limitations on consecutive sentencing. Specifically, he requests us to adopt a limit found in the commentary to American Bar Association Standard 18-4.5. It states: "[T]he Model Sentencing and Corrections Act recommends that the outer limit on the maximum be twice the maximum penalty authorized for the most serious crime committed." *ABA Standards for Criminal Justice—Sentencing Alternatives and Procedures,* commentary to sec. 18-4.5, p. 296 (Approved February 12, 1979) (footnote omitted). Alternatively, Paske asks us to adopt sec. 7.06(1)(c) of the Model Penal Code, which provides:

**Section 7.06. Multiple Sentences; Concurrent and Consecutive Terms. (1) Sentences of Imprisonment for More Than One Crime. . . .** (c) the aggregate of consecutive indefinite terms shall not exceed in minimum or maximum length the longest extended term authorized for the highest grade and degree of crime for which any of the sentences was imposed; and . . .

*ALI Model Penal Code and Commentaries,* Part I, sec. 7.06(1)(c) (adopted May 24, 1962).

Paske contends that under either limitation, his sentence should be reduced to no more than a thirty-two year consecutive sentence.[7]

We do not accept the defendant's argument that for his numerous crimes sentence should be limited to thirty-two years, i.e., twice the maximum for the most serious crime. This would create a "bargain basement" sentencing system that would encourage continued crime. Once a criminal knows that no matter how many crimes he or she commits there is no punishment that can be imposed, the "incentives" are all in favor of continued criminal activity, and a "window of opportunity" is opened to create an unlimited number of victims. When three go for the price of two, or twenty for the price of two or one hundred for the price of two, the "discount" is too much for society to bear. We will not accept it.

This court has repeatedly refused to accept guidelines or limitations on consecutive sentencing. *See State v. LaTender,* 86 Wis. 2d 410, 432, 273 N.W.2d 260

---

[7]We note that the State points out that under the *Model Sentencing and Corrections Act,* sec. 3-107(b), Paske's sentence would be ten years, not thirty-two. Section 3-107(b) provides:

> **Concurrent and Consecutive Sentences . . . (b) Notwith-standing subsection (a),** a sentence, when combined with all other undischarged sentences and remaining undischarged parts of prior sentences, may not exceed twice the maximum term of the most serious offense involved. The phrase "the maximum term of the most serious offense" as used in this subsection means the statutory maximum term of the offense carrying the longest maximum term, but does not include the additional term that could be imposed on a persistent offender or for an especially aggravated offense.

*Model Sentencing and Corrections Act.* (U.L.A.) sec. 3-107 (1985).

(1979); *Cunningham v. State,* 76 Wis. 2d at 284, 251 N.W.2d 65; *Drinkwater v. State,* 73 Wis. 2d 674, 684, 245 N.W.2d 664 (1976); *Weatherall v. State,* 73 Wis. 2d 22, 34, 242 N.W.2d 220, *cert. denied,* 429 U.S. 923 (1976).

In *Drinkwater,* this court rejected a proposal for a twenty-five year cap on consecutive sentences and a proposal that would limit consecutive sentencing to that authorized for a habitual offender for the most serious crime for which he was charged. 73 Wis. 2d at 683. This court stated: "[t]he legislature of this state has not seen fit to adopt the recommendation of the ABA. Rather it has provided that the imposition of multiple consecutive sentences is within the discretion of the trial court." *Id.* at 684.

In *Weatherall,* the defendant sought adoption of both the ABA standard requiring individualized consideration before imposing consecutive sentences and a twenty-five-year limit on consecutive sentences. 73 Wis. 2d at 33-34, 242 N.W.2d 220. This court stated that any suggestion seeking to limit the imposition of consecutive sentences should be addressed to the legislature, not the court. *Id.* at 34, 242 N.W.2d 220.

The legislature has enacted sec. 973.15(2), Stats. 1987-88, giving the court discretion in imposing concurrent and consecutive sentences. Adopting a limitation on this statute, as Paske would have us do, would put us in the position of placing a restriction on something the legislature has already given the court wide discretion in doing. We adhere to our prior decisions which give deference to legislative enactment and judicial discretion, and therefore do not adopt any limitations on consecutive

sentencing.[8]

Finally, Paske argues that *Solem v. Helm,* 463 U.S. 277 (1983) modifies the Wisconsin test for finding a criminal sentence to be cruel and unusual punishment. In *Solem,* Jerry Helm was convicted in 1979 of uttering a "no account" check for $100 in the State of South Dakota. 463 U.S. at 280. At the time of his arrest, Helm had twelve prior convictions.[9] As a result of his criminal record, Helm was subject to South Dakota's recidivist statute, which enhanced his penalty for the felony from five years' imprisonment and a $5,000 fine to life imprisonment without parole and a $25,000 fine. *Id.* at 281–282.[10] The Supreme Court, in considering whether Helm's sentence was cruel and unusual, set forth a series of objective factors to assist courts in determining the

[8]The State notes, and we agree, that even if this court were to adopt the ABA standards, the separate and distinct nature of Paske's crimes would be an exception to such limitations. *See ABA Standards for Criminal Justice,* sec. 18-4.5(b)(v).

[9]"By 1975, the State of South Dakota had convicted respondent Jerry Helm of six nonviolent felonies. In 1964, 1966, and 1969 he was convicted of third-degree burglary. In 1972 he was convicted of obtaining money under false pretenses. In 1973 he was convicted of grand larceny. And in 1975 he was convicted of third-offense driving while intoxicated." 463 U.S. at 279–80 (footnotes omitted).

[10]The statute provided:

"When a defendant has been convicted of at least three prior convictions [sic] in addition to the principal felony, the sentence for the principal felony shall be enhanced to the sentence for a 'Class 1 felony.'" SD Codified Laws sec. 22-7.8 (1979) (amended 1981). 463 U.S. at 281.

"The maximum penalty for a "Class 1 felony" was life imprisonment in the state penitentiary and a $25,000 fine." *Id.*

Moreover, South Dakota law provided that a person sentenced to life imprisonment is not eligible for parole. *Id.* at 282.

proportionality of a sentence. "First, we look at the gravity of the offense and the harshness of the penalty . . .. Second, it may be helpful to compare the sentences imposed on other criminals in the same jurisdiction . . .. Third, courts may find it useful to compare the sentences imposed for the commission of the same crime in other jurisdictions." 463 U.S. at 290–291. After applying the above guidelines, the Court concluded that Helm's sentence was significantly disproportionate to his crime and therefore prohibited by the eighth amendment. *Id.* at 303.

Wisconsin's test for proportionality can be found in *State v. Pratt,* 36 Wis. 2d 312, 322, 153 N.W.2d 18 (1967). In *Pratt,* this court recognized that under the federal test, " ' "[p]unishment is not 'cruel and unusual' unless it is so greatly disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice." ' " *Id.* (citations omitted). The court went on to consider the standard it had previously applied to determine whether a fine was excessive, and agreed to apply the same standard in determining whether a sentence was cruel and unusual; that is, is the sentence so "excessive and unusual, and so disproportionate to the offense committed, as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances?" *Id. Pratt* was subsequently cited in *Hanson v. State,* 48 Wis. 2d 203, 206, 179 N.W.2d 909 (1970); *Mallon v. State,* 49 Wis. 2d 185, 192, 181 N.W.2d 364 (1970); and *Steeno v. State,* 85 Wis. 2d 663, 669, 271 N.W.2d 396 (1978). These cases involved a challenge to a sentence for a single crime.

The proportionality test of *Pratt* is mainly concerned with a sentence that is so excessive, under the circumstances, that it shocks the conscience of the pub-

lic. It is similar to the first objective of *Helm* in that they both involve an analysis of the circumstances of the case: the gravity of the offense and the harshness of the penalty. The *Helm* test goes two steps further and suggests that the court compare the sentence at issue with sentences for other offenses in the same jurisdiction and with sentences for the same offense in other jurisdictions. But as the Court stated:

> [W]e do not adopt or imply approval of a general rule of appellate review of sentences. Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits. In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate.

*Helm,* 463 U.S. at 290 n. 16.

We will review sentencing for abuse of discretion. *McCleary v. State,* 49 Wis. 2d at 277, 182 N.W.2d 512.

Helm presented such a rare case where the court was "required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." Because Helm had three prior convictions on his record, under the South Dakota recidivist statute, he was subject to life imprisonment for uttering a "no account" check for $100.[11] We agree with the majority of

---

[11]This type of statute is the old "three time loser" statute that Hollywood movies made famous in the 1930's; the criminal, during the commission of a crime, becomes desperate at the thought of being caught because with one more conviction, he will

jurisdictions that limit the application of *Helm* to a sentence of life imprisonment without parole.[12]

We have previously determined that the circuit court did not abuse its discretion in sentencing Paske to a ninety-five-year aggregate sentence. No one is arguing that under the doctrine of proportionality, the maximum sentence for any one of these burglaries is disproportionate to the crimes. The argument by Paske is that the sentence is disproportionate in the aggregate. Considering Paske's extensive record consisting of forty-two prior felony convictions; the fact that Paske was convicted of twenty additional burglaries because of his latest spree; and the terror in the Sheboygan area as a result of Paske's crimes, we do not consider Paske's sentence so "excessive and unusual" as to "shock the public sentiment." We therefore hold that under the circumstances of this case, Paske's sentence of ninety-five years, as a repeat offender, for twenty burglary convictions was not disproportionate to the offenses committed. We therefore affirm the second amended judgment of conviction and sentence entered by the circuit court on May 4, 1990.

*By the Court.*—The judgment and sentence of the circuit court is affirmed.

get life. Even the other crooks avoided him because he would be bound to "shoot his way out" and make the rest accessories to more than they cared to be involved in.

[12]*See e.g., Barnwell v. State,* 567 So. 2d 215, 221 (Miss. 1990); *Maxwell v. State,* 775 P.2d 818, 820 (Okla. Crim. App. 1989); *McGee v. State,* 467 So. 2d 685, 690 (Ala. Crim. App. 1985); *United States v. Rhodes,* 779 F.2d 1019, 1028 (4th Cir. 1985), *cert. denied,* 476 U.S. 1182 (1986).