SHIRLEY S. ABRAHAMSON, J.
¶ 62. (dissenting). At issue in the instant case is the constitutionality of Wis. Stat. § 48.685(5)(br)5. (2013-14),[1] which permanently bars individuals convicted of, among other things, "[a]n offense involving fraudulent activ *39 ity as a participant" in various federal and Wisconsin welfare programs from becoming a state certified childcare provider.
¶ 63. The consequences of being unable to become a certified childcare provider are substantial. Childcare providers who provide care for four or more children or for children over the age of seven must be certified.[2] Only certified childcare providers are eligible to provide services to individuals in the Wisconsin Shares program, a childcare subsidy program for low-income individuals.
¶ 64. As a result of Wis. Stat. § 48.685(5)(br)5., Sonja Blake is permanently barred from being a certified childcare provider. The basis for the permanent bar is Sonja Blake's 1986 misdemeanor conviction for obtaining $294 in benefits to which she was not entitled through a federal public assistance program unrelated to childcare. Sonja Blake obtained the $294 in excess benefits by failing to report as assets a motorcycle and a car that did not run.
¶ 65. Blake satisfied the requirements of her conviction. She served two years' probation and paid $294 in restitution. Since 1986 she has had no trouble with the law. She has been a Wisconsin certified childcare provider for nearly a decade. She has never faced complaints of fraud, abuse, or neglect.[3]
¶ 66. This personal history is strong evidence of Blake's rehabilitation and that she is no danger to the public. Empirical evidence demonstrates that the risk *40 of recidivism declines as time passes.[4] Wisconsin's public policy favors rehabilitation of offenders and their reintegration into society.[5] Nevertheless, after the enactment of Wis. Stat. § 48.685(5)(br)5. (2009 Wis. Act 76), Racine County, which had previously granted and renewed Blake's childcare certification, permanently revoked her certification.
¶ 67. Although the majority opinion recognizes that "the sweeping nature" of Wis. Stat. § 48.685(5)(br)5. "creates harsh results for people such as Blake who have a conviction . . . that is distant in time and involved a relatively small amount of money," the majority opinion holds that § 48.685(5)(br)5. does not violate equal protection, substantive due process, or the irrebuttable presumption doctrine.[6]
*41 ¶ 68. I disagree with the majority opinion for two reasons.
¶ 69. First, whether analyzed under the equal protection or the due process clauses of the United States and Wisconsin Constitutions, Wis. Stat. § 48.685(5)(br)5. is not rationally related to legitimate state purposes. Although rational basis scrutiny may be deferential, it is not "toothless."[7]
¶ 70. The permanent bar against obtaining a childcare certification for individuals convicted of an "offense involving fraud as a participant" in various public assistance programs set forth in Wis. Stat. § 48.685(5)(br)5. is not rationally related to the purposes of "preventing fraud against Wisconsin Shares" or "protecting children, protecting the families of children, and protecting private employers in childcare."[8]
¶ 71. Because I would hold that Wis. Stat. § 48.685(5)(br)5. is unconstitutional under the equal protection and due process clauses, I would reverse the decision of the court of appeals in the instant case and overrule the court of appeals' decision in Brown v. Department of Children & Families, 2012 WI App 61, 341 Wis. 2d 449, ¶ 40, N.W.2d 827.[9]
*42 f 72. Second, the majority opinion's decision upholding the draconian sanction imposed by Wis. Stat. § 48.685(5)(br)5. raises the constitutional issue of whether the statute is an unconstitutional ex post facto law. A statutory interpretation that does not raise constitutional issues is preferable to one that does. See Jankowski v. Milwaukee Cnty., 104 Wis. 2d 431, 439, 312 N.W.2d 45 (1981) (" '[Statutes should be construed so as to avoid constitutional objections.'") (quoting Niagara of Wis. Paper Corp. v. DNR, 84 Wis. 2d 32, 50, 268 N.W.2d 153 (1978)).
¶ 73. For the reasons set forth, I dissent and write separately.
I — f
¶ 74. I disagree with the majority opinion s analysis and conclusions under both the equal protection and due process clauses that Wis. Stat. § 48.685(5)(br)5. is rationally related to a legitimate state purpose.
f 75. I begin with the equal protection clause. Under the equal protection clause, the legislature may not adopt arbitrary or irrational classifications.[10]
¶ 76. Wisconsin Stat. § 48.685(4m)(a)-(b) and (5)(br) classify various felony and misdemeanor offenses into three categories.
¶ 77. Each of the three categories of offenses created by Wis. Stat. § 48.685(4m)(a)-(b) and (5)(br) has a different consequence for childcare certification. *43 These three categories are: (1) offenses that result in a permanent bar from obtaining a childcare certification with no opportunity to show rehabilitation; (2) offenses that result in a bar for five years after the completion of the sentence (including probation, parole, or extended supervision); and (3) offenses that result in a bar that may be lifted at any time upon a showing of rehabilitation.
¶ 78. It is difficult to discern what, if any, organizing principles the legislature followed in classifying which offenses fall into each of these three categories, let alone their relationship to the legislative purposes of "preventing fraud against Wisconsin Shares"[11] or "protecting children, protecting the families of children, and protecting private employers in childcare."[12]
¶ 79. For example, some fraudulent activities result in a permanent bar. Individuals convicted of "an offense involving fraudulent activity as a participant" in various public assistance programs — even fraudulent activity in trifling amounts — are permanently barred from obtaining a childcare certification.[13] Not all crimes of dishonesty or fraud, however, result in a permanent bar from obtaining a childcare certification. Rather, offenses like making fake IDs, impersonating government agents, or forging prescriptions result in only a five year bar from obtaining a childcare certification.
¶ 80. Likewise, although convictions for several serious felonies like first degree intentional homicide, kidnapping, and sexual assault result in a permanent bar from obtaining a childcare certification, not all *44 serious felonies result in a permanent bar. Homicide by intoxicated use of a vehicle or firearm or providing alcoholic beverages to children resulting in death or great bodily harm result in a five-year bar. Offenses like sexual exploitation by a therapist, human trafficking, or misdemeanor neglect of a child merely result in a bar against obtaining a certification that may be lifted upon a showing of rehabilitation. Yet these offenses pose serious danger to children or families of children.
¶ 81. These inconsistencies demonstrate that the three-part classification system in Wis. Stat. § 48.685 is not rationally related to the State's purposes of "preventing fraud against Wisconsin Shares"[14] or "protecting children, protecting the families of children, and protecting private employers in childcare."[15]
f 82. The State argues that analyzing the rationality of the three-part classification system adopted by the legislature is misguided. According to the State, the only relevant classification to be examined in the instant case is that of individuals convicted of offenses involving fraudulent activity as recipients in various public assistance programs. In the State's view, all persons, including Blake, convicted of offenses involving fraudulent activity as recipients in public benefits programs are treated the same.
¶ 83. The majority opinion adopts this view without analysis, explanation, or citation to authority, stating: "The class we evaluate for equal protection purposes consists of people permanently ineligible for licensure or certification on the grounds that their record contains a conviction for '[a]n offense involving *45 fraudulent activity as a participant' in one of the various government benefits programs delineated in" Wis. Stat. § 48.685(5)(br)5.[16]
¶ 84. By evaluating only the class of individuals permanently barred from being certified childcare providers on account of convictions for offenses involving fraudulent activity as participants in a public assistance program, the majority opinion's review is "a mere tautological recognition of the fact that [the legislature] did what it intended to do." U.S. R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 180 (1980) (Stevens, J., concurring in the judgment).
¶ 85. "The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes."[17]I conclude that "[t]his Court. . . has an obligation to view the classificatory system, in an effort to determine whether the disparate treatment accorded the affected classes is arbitrary."[18]
¶ 86. Looking to the entire classification system in the statute, I conclude that the three categories created by Wis. Stat. § 48.685 are irrational and arbitrary; they are not based upon substantial distinctions that make the classes really different from one another, and the classifications adopted are not germane to the purposes of the law.[19]
¶ 87. The majority opinion concludes that Wis. Stat. § 48.685(5)(br)5. and the permanent bar for individuals convicted of public assistance fraud is rational because "[t]he legislature . . . could reasonably deter *46 mine that creating different outcomes for people with different underlying convictions would most efficaciously advance the objective of preventing fraud against Wisconsin Shares. Because public benefits fraud is the particular type of fraud that the legislature sought to prevent, the legislature could reasonably determine that public benefits fraud offenses warranted a stricter prohibition than other underlying convictions."[20]
¶ 88. This conclusion, however, ignores three facts demonstrating that Wis. Stat. § 48.685(5)(br)5.'s permanent bar on obtaining a childcare certification for individuals convicted of public assistance fraud does not advance the purpose of "eliminating fraudulent activity in the Wisconsin Shares program."[21]
¶ 89. First, childcare providers who provide care for four or more children or for children over the age of seven must be certified,[22] regardless of whether those providers receive funds from Wisconsin Shares. More than half of the facilities whose employees must be certified childcare providers receive no money from Wisconsin Shares whatsoever[23] In other words, individuals like Blake are barred from ever working for a childcare provider whose employees must be certified, even though working for that childcare provider might not present an opportunity to defraud Wisconsin Shares.
¶ 90. Second, the permanent bar on being a certified childcare provider based on public assistance fraud is not limited to individuals who defrauded Wisconsin Shares. Instead, individuals (like Blake) *47 who 30 years ago illegally obtained a small amount of benefits from a federal program not related to childcare[24] are subject to the same permanent bar received by individuals who illegally obtained significant amounts of benefits from Wisconsin Shares.[25]
¶ 91. Third, the permanent bar against obtaining a childcare certification for individuals convicted of offenses involving fraudulent activity in a public benefits program does not apply to bookkeepers for regulated childcare facilities, or to other individuals who may have access to Wisconsin Shares' funds. Given that Wis. Stat. § 48.685(5)(br)5.'s purpose is eliminating fraud in the Wisconsin Shares program, prohibiting individuals from working as caregivers while allowing individuals to work as bookkeepers for childcare facilities receiving Wisconsin Shares funds is not rationally related to the legislative purpose.
¶ 92. Viewing the entire classification system in the statute, I conclude that the classifications created by Wis. Stat. § 48.685 are irrational and arbitrary. Accordingly I would hold that Wis. Stat. § 48.685(5)(br)5. violates the equal protection clauses of the United States and Wisconsin Constitutions.
¶ 93. Now I turn to the due process clause. I conclude that Wis. Stat. § 48.685(5)(br)5. is unconstitutional under the due process clause because the *48 statute shocks the conscience and, as explained above, is not rationally related to a legitimate state purpose.
¶ 94. As the majority opinion states, the due process clause protects " 'against governmental action that either shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'"[26]
¶ 95. Simply put, Wis. Stat. § 48.685(5)(br)5. shocks the conscience.
¶ 96. The means by which the legislature chose to further its legitimate interest in protecting the public fisc and deterring fraud against Wisconsin Shares is arbitrary and smacks of retribution. The permanent bar on obtaining a childcare certification imposed by Wis. Stat. § 48.685(5)(br)5. is a draconian and disproportionate deterrent for the kind of fraud the legislature sought to prevent.
¶ 97. Furthermore, Wis. Stat. § 48.685(5)(br)5. is so broad that it arbitrarily, irrationally, and significantly impedes the ability of law-abiding people like Blake to earn a living in their chosen profession, childcare. The permanent bar is based on a 30-year-old conviction for obtaining $294 in excess benefits under a federal public assistance program totally unrelated to Wisconsin Shares — the program which the legislature sought to protect by enacting Wis. Stat. § 48.685(5)(br)5. This result should shock the conscience. It does mine.
¶ 98. "[T]he right to work for a living in the common occupations of the community is the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to *49 secure." Truax v. Raich, 239 U.S. 33, 41 (1915); see also Schware v. Bd. of Bar Exam'rs, 353 U.S. 232, 239-39 (1957); majority op., ¶ 49 n.18.
¶ 99. In my view, Wis. Stat. § 48.685(5)(br)5. is so " 'brutal' and 'offensive'" that it does not "comport with traditional ideas of fair play and decency . . . ,"[27] Accordingly, Wis. Stat. § 48.685(5)(br)5. violates substantive due process.
¶ 100. The majority opinion recognizes, in effect, the disproportionate, draconian, and "brutal" nature of Wis. Stat. § 48.685(5)(br)5. As the majority opinion puts it, "the sweeping nature" of Wis. Stat. § 48.685(5)(br)5. "creates harsh results for people such as Blake who have a conviction . . . that is distant in time and involved a relatively small amount of money."[28]
¶ 101. Reinforcing this point, both this court and the court of appeals have previously recognized the harshness of Wis. Stat. § 48.684(5)(br)5.'s permanent bar on obtaining a childcare certification for individuals convicted of offenses "involving fraudulent activity as a participant in" public assistance programs.[29]
I — I l — l
1 102. Recognizing the harshness of Wis. Stat. § 48.685(5)(br)5. but concluding that the law is nevertheless constitutional under the equal protection and *50 due process clauses raises a further question: Whether the law is so "harsh" and "punitive" that it violates the ex post facto clauses of the United States and Wisconsin Constitutions. The parties have not briefed or argued this point. Without briefs or argument, I discuss but do not decide this issue.
¶ 103. One commentator has argued that the retroactive and permanent punitive effect of Wis. Stat. § 48.685(5)(br)5. violates the ex post facto clause. See Courtney Lanz, Comment, Caregivers Uncared For: How to Fix Wisconsin's Ex Post Facto Caregiver Law, 2013 Wis. L. Rev. 1067, 1081 (asserting that the "punitive effect" of Wis. Stat. § 48.685(5)(br)5. "is sufficient to outweigh any stated civil intent and thus violates the Ex Post Facto clause.").
¶ 104. Relevant to the instant case, the ex post facto clause prohibits laws making "more burdensome the punishment for a crime, after its commission . . . ."[30]
¶ 106. Without analysis of Wis. Stat. § 48.685(5)(br)5. it appears that the statute is a regulatory civil statute. A regulatory civil statute nonetheless may violate the ex post facto clause if it is " 'so punitive either in purpose or effect' as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.' "[31]
*51 ¶ 106. For several reasons, the permanent bar on obtaining a childcare certification set forth in Wis. Stat. § 48.685(5)(br)5. may be so punitive in purpose and effect that the otherwise regulatory civil statute may be transformed into a criminal penalty.
¶ 107. First, Wis. Stat. § 48.685(5)(br)5. permanently bars individuals convicted of "offense[s] involving fraudulent activity as a participant" in various social welfare programs from obtaining a childcare certification and prohibits individuals from demonstrating rehabilitation.[32] In this respect, the law appears to be punitive — it imposes a sanction that cannot be lifted no matter the circumstances.
¶ 108. Second, the permanent bar (with no opportunity to show rehabilitation) imposed by Wis. Stat. § 48.685(5)(br)5. applies regardless of when the "offense involving fraudulent activity" occurred, no matter how minor the fraud was, and no matter which public benefits program was defrauded. Thus, an individual like Blake, who committed an offense and was convicted 30 years ago of obtaining $294 by fraud from a federal program unrelated to childcare and unrelated to the Wisconsin Shares program, is treated identically to an individual who recently stole millions from Wisconsin Shares.[33] Imposing the same permanent bar against individuals under Blake's circumstances appears, in light of the legislature's purposes of protect *52 ing children and families and preventing fraud against Wisconsin Shares, punitive.
¶ 109. Third, Wis. Stat. § 48.685(5)(br)5. appears to further "the traditional aims of punishment— retribution and deterrence . . . ," factors used to identify ex post facto laws.[34] As stated before, Wis. Stat. § 48.685(5)(br)5. appears retributive because it gives individuals convicted of "offense[s] involving fraudulent activity as a participant" in public benefits programs no opportunity to demonstrate rehabilitation and imposes the same sanction regardless of when the fraud occurred, what program was defrauded, and how minimal or serious the fraud was. As the majority opinion states, this "strict prohibition" is tied to the legislative purposes of "preventing] fraud against Wisconsin Shares [and] also deter [ring] other fraudulent conduct. . . ,"[35] General and specific deterrence are traditional aims of punishment.
¶ 110. Finally, the circumstances under which Wis. Stat. § 48.685(5)(br)5. was adopted also support the conclusion that the law may be punitive and retributive. Wisconsin Stat. § 48.685(5)(br)5. was adopted by the legislature after an investigation by the Milwaukee Journal Sentinel uncovered significant fraud against the Wisconsin Shares program.[36] The bill creating Wis. Stat. § 48.685(5)(br)5. was introduced on October 2, 2009 and passed both houses of the legislature unanimously a little more than a month later. This haste suggests that the legislature's "sudden and strong passions" may have been aroused *53 by fraud uncovered against the Wisconsin Shares program. One purpose of the ex post facto clause is to prevent "sudden and strong passions" from transforming well-intentioned regulations into arbitrary and punitive legislation.[37]
¶ 111. The prohibition on ex post facto laws stems from basic considerations of fairness and fair warning.[38] There is no fairness or fair warning here. Wisconsin Stat. § 48.685(5)(br)5. permanently bars individuals like Blake from ever obtaining a childcare certification based on a decades-old misdemeanor conviction. Imposing a draconian penalty decades after a misdemeanor conviction without notice to the individual at the time of conviction raises the question of whether Wis. Stat. § 48.685(5)(br)5. makes "more burdensome the punishment for a crime, after its commission . . . ,"[39]
¶ 112. Under the circumstances of the instant case and the interpretation adopted by the majority opinion, the majority has exposed the application of Wis. Stat. § 48.685(5)(br)5. to Blake to a challenge as an unconstitutional ex post facto law.
¶ 113. For the reasons set forth, I dissent and write separately.
¶ 114. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

 All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

 See Wis. Stat. § 48.65; Brown v. DCF, 2012 WI App 61, ¶ 40, 341 Wis. 2d 449, 819 N.W.2d 827.

 Blake's certification was revoked in 2006 and reinstated in 2008. See majority op., ¶¶ 14-15.

 See, e.g., Alfred Blumstein & Kiminori Nakamura, "Redemption" in an Era of Widespread Criminal Background Checks, U.S. Dep't of Justice, Nat'I Inst, of Justice (June 2009), http://www.nij.gov/journals/263/pages/redemption.aspx ("It is well known — and widely accepted by criminologists and practitioners alike — that recidivism declines steadily with time clean.").

 Wisconsin case law recognizes that a goal of sentencing is imposing the minimum sentence consistent with "the rehabilitative needs of the defendant." See State v. Gallion, 2004 WI 42, ¶ 44, 270 Wis. 2d 535, 678 N.W.2d 197 (quotation omitted); see also State v. Paske, 163 Wis. 2d 52, 62, 471 N.W.2d 55 (1991) ("The three primary factors which a sentencing judge must consider are the gravity of the offense, the character and rehabilitative needs of the defendant, and the need to protect the public."); Wis. Dep't of Corrections, Reentry at 2 (Mar. 2012), http://doc.wi.gov/Documents/WEB/ABOUT/OVERVIEW /ReentryUnit/ReentryCommunicationsDocument%202012.pdf (stating that the Wisconsin Department of Corrections "strives to rehabilitate and successfully reintegrate [offenders] into society").

 See majority op., ¶ 61.

 Schweiker v. Wilson, 450 U.S. 221, 234 (1981) (quoting Matthews v. Lucas, 427 U.S. 495, 510 (1976)) (internal quotation marks omitted)).

 See majority op., ¶¶ 39, 41, 60.

 Brown upheld Wis. Stat. § 48.685(5)(br)5. against a constitutional challenge somewhat similar to that raised in the instant case. Brown concluded that Wis. Stat. § 48.685(5)(br)5. was constitutional under the equal protection and due process clauses of the United States and Wisconsin Constitutions. See Brown, 341 Wis. 2d 449, ¶¶ 33-34, 40.
Although I limit my conclusion to Wis. Stat. § 48.685(5)(br)5., as does the majority opinion, my conclusion *42 may apply with equal force to other parts of the classification system created by Wis. Stat. § 48.685(4m)(a)-(b) and (5)(br).

 See State v. Burgess, 2003 WI 71, ¶ 32, 262 Wis. 2d 354, 665 N.W.2d 124; Aicher ex rel. LaBarge v. Wis. Patients Comp. Fund, 2000 WI 98, ¶ 57, 237 Wis. 2d 99, 613 N.W.2d 849.

 See majority op., ¶¶ 41, 60.

 See majority op., ¶ 39.

 See Wis. Stat. § 48.685(5)(br)5.

 See majority op., ¶¶ 41, 60.

 See majority op., ¶ 39.

 See majority op., ¶ 37; see also majority op., ¶ 46.

 See Rinaldi v. Yeager, 384 U.S. 305, 308 (1966).

 Logan v. Zimmerman Brush Co., 455 U.S. 422, 441 (1982) (Blackmun, J., writing separately joined by three justices) (emphasis in original).

 See Aicher, 237 Wis. 2d 99, ¶ 58.

 See majority op., ¶ 41 (emphasis in original).

 See majority op., ¶ 42.

 See Brown, 341 Wis. 2d 449, ¶ 40.

 See Pet'r's App. at 032.

 See Wis. Stat. § 48.685(5)(br)5. (barring individuals convicted of "[a]n offense involving fraudulent activity as a participant in the Wisconsin Works program" as well as federal programs like AFDC, food stamps, or other state programs like Badger Care).

 See, e.g., Raquel Rutledge, Private Fortune, Public Cash, Milwaukee J. Sentinel (Aug. 31, 2009), available at http: //www.jsonline.com/watchdog/watchdogreports/56121342.html (describing a woman who received nearly '$3 million from the Wisconsin Shares program over more than a decade).

 Majority op., ¶ 47 (quoting Dane Cnty. DHS v. P.P., 2005 WI 32, ¶ 19, 279 Wis. 2d 169, 694 N.W.2d 344) (internal alterations and quotation marks omitted).

 See Breithaupt v. Abram, 352 U.S. 432, 435 (1957) (quoting Rochin v. California, 342 U.S. 165, 174 (1952)).

 See majority op., ¶ 61.

 See, e.g., Jamerson v. DCF, 2013 WI 7, ¶¶ 2 & n.3, 72, 345 Wis. 2d 205, 824 N.W.2d 822 (twice describing the permanent bar on obtaining a childcare certification as a "harsh penalty"); Brown, 341 Wis. 2d 449, ¶ 40 (noting that the plaintiff was "undoubtedly correct in highlighting the harshness of the new law . . ..").

 State v. Thiel, 188 Wis. 2d 695, 703, 524 N.W.2d 641 (1994) (internal quotation marks and alterations omitted) (quoting Collins v. Youngblood, 497 U.S. 37, 42 (1990)).

 See In re Commitment of Rachel, 2002 WI 81, ¶ 33, 254 Wis. 2d 215, 647 N.W.2d 762 (quoting Hudson v. United States, 522 U.S. 93, 99 (1996)) (alteration in Rachel).
In analyzing whether a statute violates the ex post facto clause, courts apply the "intent-effects" test derived from Hudson and repeated in our cases. See Rachel, 254 Wis. 2d *51 215, ¶ 39; State v. Scruggs, 2015 WI App 88, ¶ 7, 365 Wis. 2d 568, 872 N.W.2d 146 (citation omitted).

 See Wis. Stat. § 48.685(5)(br) ("[N]o person who has been convicted ... may be permitted to demonstrate that he or she has been rehabilitated."); majority op., ¶ 8.

 See, e.g., Rutledge, supra note 25 (describing a woman who received nearly $3 million from the Wisconsin Shares program over more than a decade).

 Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168 (1963); see also Commitment of Rachel, 254 Wis. 2d 215, ¶ 33 (quoting this factor and others identified in Mendoza-Martinez).

 Majority op., ¶ 50.

 See majority op., ¶¶ 11, 51.

 See Fletcher v. Peck, 10 U.S. (6 Cranch) 87, 137-38 (1810).

 See State v. Kurzawa, 180 Wis. 2d 502, 513, 509 N.W.2d 712 (1994).

 Thiel, 188 Wis. 2d at 703 (internal quotation marks and alterations omitted) (quoting Collins v. Youngblood, 497 U.S. 37, 42 (1990)).