STATE of Wisconsin, Plaintiff-Respondent,

v.

Richard J. KENYON, Defendant-Appellant.

Court of Appeals

*No. 98–1421–CR. Submitted on briefs February 4, 1999.—Decided March 11, 1999.*

(Also reported in 593 N.W.2d 491.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Rex R. Anderegg* of *Anderegg & Mutschler, L.L.P.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *William C. Wolford*, assistant attorney general.

Before Dykman, P.J., Eich and Vergeront, J.J.

VERGERONT, J.   Richard J. Kenyon appeals an order directing that he liquidate his life insurance policy, withdraw the funds from his pension plan and transfer the money from both (less 20% of the pension plan that would be withheld by the IRS) to the victims of his embezzlement crime to satisfy part of the restitution due those victims. We conclude the trial court's order is barred by the anti-alienation clause of the Employee Retirement Income Security Act (ERISA), *see* 29 U.S.C. § 1056(d), and we reject the State's estoppel argument. We therefore reverse and remand.[1]

## BACKGROUND

Kenyon was convicted of two counts of theft by misappropriation in a business setting contrary to § 943.20(1)(b), STATS. A probation and parole agent completed a pre-sentence investigation (PSI) before the sentencing hearing. Under the subheading "Victim Restitution Plan," the PSI stated:

---

[1] Kenyon also argues in the alternative that the trial court erroneously exercised its discretion in ordering all of the pension fund, except the twenty percent withheld by the IRS, transferred to the victim without considering the additional penalties Kenyon would face for early withdrawal. In light of our decision to reverse the order to withdraw the funds, we need not reach this alternative argument.

The defendant has a balance of $68,361.34 in a retirement account through La Crosse Truck Center, plus an additional $7,305.05 cash value [presumably of a life insurance policy in the same account] which he could apply toward restitution if he chooses. This factor should be seriously considered at sentencing.

Under the subheading "Agent's Recommendation," the PSI stated:

It is respectfully recommended that on Count I, the defendant be sentenced to a period in the Wisconsin State Prison System. On Count II, the defendant should be placed on a consecutive period of probation with the condition that his retirement benefits be withdrawn and applied toward restitution. He should be ordered to pay restitution in full. . . .

At the sentencing hearing in July 1997, the prosecutor argued for lengthy prison terms on both counts due to the large amount of money involved (almost $150,000), the ongoing violation of a position of trust, and Kenyon's lack of remorse and failure to take responsibility for his crime. Kenyon argued for probation on both counts with restitution as a condition of probation. As a part of this argument, Kenyon's attorney referred to the life insurance and pension fund mentioned in the PSI. With regard to the life insurance, he stated, "while the insurance has a cash value of $7,000, it pays a death benefit of at this time $45,000." He continued:

If the Court were to order that death benefit to be paid to the company, that's 68 [pension plan] plus 45 [death benefit of life insurance policy]. He also has a death benefit that pays 24,000 from J.C. Penney.

> If the company exercised its option at a later time conceivably they could even recover more than restitution. This is simply a matter of entering a court order to this effect.

Kenyon's attorney then argued, "if the Court were to incarcerate Mr. Kenyon . . . Mr. Kenyon obviously between now and next week would be wise not to consider making any restitution. . . ." The limited time frame, "between now and next week," apparently relates to Kenyon's second argument for probation—due to Kenyon's medical needs, which would not be met in prison, Kenyon argues, he would not survive more than a week if incarcerated.

The trial court sentenced Kenyon to five years' imprisonment on count one and withheld sentencing on the second count, placing Kenyon on ten years' probation concurrent with the prison term. Concerning restitution, the court ordered as follows:

> As conditions [of probation], number one, you will make restitution to the victims. The Court will find that you have the ability to do that. The probation agent will make the initial determination as to the amount of the restitution, and this Court will retain jurisdiction for a period of two years to settle any disputes regarding the amount of that restitution that's due.

In September, the State filed a motion to modify probation, which requested that the court order the defendant to allow any benefits earned through his employment at La Crosse Truck Center and River States Truck and Trailer, namely his pension fund and life insurance policy, to be paid to the victims for restitution. A restitution hearing was held on March 2, 1998, at which Richard Jacobs, the controller for La Crosse Truck Center and River States Truck and

Trailer, testified for the State as to the amount of the victims' losses and the value of Kenyon's life insurance and pension fund.

During the cross-examination of Jacobs, the court accepted into evidence a copy of La Crosse Truck Center, Inc.'s Employee Savings and Retirement Plan and Trust. Kenyon's attorney read the following provisions to Jacobs:

9.2 ALIENATION

(a)  Subject to the exceptions provided below, ˄ no benefit which shall be payable out of the Trust Fund to any person (including a Participant or his Beneficiary) shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge, and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, or charge the same shall be void; and no such benefit shall in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements, or torts of any such person, nor shall it be subject to attachment or legal process for or against such person, and the same shall not be recognized by the Trustee, except to such extent as may be required by law.

. . . .

9.6 PROHIBITION AGAINST DIVERSION OF FUNDS

(a)  Except as provided below and otherwise specifically permitted by law, it shall be impossible by operation of the Plan or of the Trust, by termination of either, by power of revocation or amendment, by the happening of any contingency, by collateral arrangement or by any other means, for any part of the corpus or income of any trust fund maintained pursuant to the Plan or any funds contributed thereto to be used for, or diverted to, purposes other

than the exclusive benefit of Participants, Retired Participants, or their Beneficiaries.

Jacobs conceded that these provisions were in the plan and that the plan was an IRS approved retirement plan.

In its oral decision, the trial court acknowledged that the plan "prohibits somebody from mortgaging or pledging those items, or from a normal creditor to perhaps even attack those amounts," but concluded that Kenyon could voluntarily withdraw the funds and therefore the court could order him to do so and order that they be transferred to the victims as a condition of Kenyon's probation. The court granted the State's motion to modify probation and issued a written order directing Kenyon to withdraw the funds from his pension plan and the cash value of his insurance policy[2] and transfer them to the victims for restitution (less 20% of the pension plan withheld for the IRS).

## ANALYSIS

Kenyon argues the trial court erred in ordering him to withdraw and transfer his pension fund as a condition of probation because the order is preempted by federal law in that ERISA strictly prohibits assignment or alienation of pension benefits. Since the pertinent facts are undisputed, we are presented with a question of law, which we decide de novo. *See State v.*

---

[2] We understand from the record that the life insurance policy in question is also part of the La Crosse Truck Center, Inc.'s Employee Savings and Retirement Plan and Trust. When we refer to the pension fund, we therefore are referring to both the cash value of the retirement plan and of the insurance policy.

*Williams*, 104 Wis. 2d 15, 21–22, 310 N.W.2d 601, 604–05 (1981).

The Employee Retirement Income Security Act of 1974 is a federal law that preempts state laws, including orders of a state court, that "relate to" pension plans. 29 U.S.C. § 1144(a) and (c)(1). The anti-alienation clause of ERISA states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). The related federal regulation states: "benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process." 26 CFR § 1.401(a)–13(b)(1) (1989). The United States Supreme Court has interpreted this legislative directive broadly, holding that it is not "appropriate to approve any generalized equitable exception—either for employee malfeasance or for criminal misconduct—to ERISA's prohibition on the assignment or alienation of pension benefits." *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 376 (1990).

*Guidry* is a civil case in which the union that had employed Guidry as chief executive officer received a judgment against Guidry, who was previously convicted for embezzling funds from the union. The district court ruled that a constructive trust should be imposed on Guidry's pension benefits to satisfy the judgment. The Supreme Court reversed and held that the constructive trust violated the anti-alienation clause of ERISA. *Id.* at 372. The Court recognized that Guidry's employment with the union from which he stole made him eligible to receive the pension benefits, but held that the constructive trust remedy imposed by the district court was nevertheless prohibited by

ERISA. *Id.* at 367. The Court commented that if it were to make exceptions "whenever a judgment creditor relied on the remedial provisions of a . . . statute," it would eviscerate the protections of the anti-alienation clause, protections that extend to dependents of the pensioner, who are often blameless. *Id.* at 375–76.[3]

■

It is undisputed that the pension plan in this case, like that in *Guidry*, was an IRS approved plan that included the anti-alienation clause required by ERISA. The trial court here held the anti-alienation clause did not prohibit the court from ordering Kenyon to withdraw and transfer funds that Kenyon could otherwise withdraw voluntarily. Although we understand the trial court's motivation to fashion a restitution plan aimed at both strengthening an offender's sense of responsibility and helping to restore the victims' losses, we conclude, based on *Guidry* and post-*Guidry* cases,[4]

---

[3] In *Guidry v. Sheet Metal Workers National Pension Fund*, 493 U.S. 365, 376–77 (1990), the Supreme Court recognized that there might understandably be a "natural distaste" for the result, but it clearly stated: "If exceptions to this policy are to be made, it is for Congress to undertake that task." One commentator has suggested that, in the absence of Congressional action, the Supreme Court should reconsider whether it was truly the intention of ERISA to "promote the right of a criminal and his family members to enjoy stolen property," overrule *Guidry*, and adopt an equitable exception to the anti-alienation clause for criminal fraud. Charles T. Caliendo, Jr., Note, *Removing the "Natural Distaste" from the Mouth of the Supreme Court with a Criminal Fraud Amendment to ERISA's Anti-alienation Rule*, 68 St. John's L. Rev. 667, 718–25 (1994).

[4] *See, e.g., Patterson v. Shumate*, 504 U.S. 753 (1992) (declining to recognize any implied exceptions to ERISA's prohibition on the assignment or alienation of pension benefits and holding that the anti-alienation clause of ERISA protects pen-

that the trial court erred. The court's order essentially created an equitable exception to ERISA's anti-alienation clause, which *Guidry* expressly prohibits. Although the trial court's order did not directly garnishee the pension fund or create a constructive trust as was done in *Guidry,* the practical result is the same—an involuntary transfer of money from Kenyon's pension fund.[5]

sion plan funds from inclusion in bankruptcy estate); *Pomeranke v. Williamson,* 478 N.W.2d 800 (Minn. Ct. App. 1991) (reversing a trial court's order directing the release of an embezzler's profit sharing account to a victim as payment of the restitution order); *United States v. Smith,* 47 F.3d 681 (4th Cir. 1995) (holding pension fund benefits cannot be transferred to satisfy restitution order even when the benefits have been distributed to the offender as retirement benefits); *Roberts v. Baugh,* 986 F. Supp. 1074 (E.D. Mich. 1997) (holding that ERISA prohibits the state treasurer from receiving a court order to deposit a prisoner's pension benefits into his personal prison account which could be used to partially reimburse costs of the prisoner's incarceration).

[5] Although some post-*Guidry* cases have placed certain limits on the effect of the anti-alienation clause, none are applicable here. *See, e.g., McGraw v. Society Bank & Trust,* 5 F.3d 150 (6th Cir. 1993) (restating the law of Guidry, but holding that when contributions to the pension plan violate the net income requirement of the plan, the contributions are "void ab initio" and not protected by ERISA); *United States v. Gaudet,* 966 F.2d 959 (5th Cir. 1992) (holding the district court's failure to follow *Guidry* was not plain error); *Coar v. Kazimir,* 990 F.2d 1413 (3rd Cir. 1993) (holding anti-alienation clause does not protect the benefits of a beneficiary who breached a fiduciary duty to the fund); *State v. Pulasty,* 642 A.2d 1392 (N.J. 1994) (holding that pension benefits already distributed are not protected by ERISA and can be ordered to be transferred to satisfy restitution); *New Orleans Elec. Pension Fund v. Newman,* 784 F. Supp. 1233 (E.D. La. 1992) (holding ERISA does not preempt

The State does not argue that the court's order was not an indirect transfer of Kenyon's pension fund or that the anti-alienation clause should not apply in cases of criminal restitution. Instead, the State argues, citing *State v. Dziuba*, 148 Wis. 2d 108, 435 N.W.2d 258 (1989), that Kenyon is estopped from arguing the funds are not available under ERISA.[6] The State contends that Kenyon advocated the payment of restitution with his pension fund and life insurance at the sentencing hearing in order to obtain a sentence of probation rather than prison; the court did place him on probation for the second count, with the condition of restitution; and Kenyon should therefore be estopped from now claiming that his pension fund is not in fact available to pay restitution. We conclude that the facts of this case differ in significant ways from those in *Dziuba* such that equitable estoppel does not apply.

In *Dziuba*, 148 Wis. 2d at 109, 435 N.W.2d at 259, the trial court sentenced the defendant to five years in prison but stayed the sentence and ordered probation for seven years. As a condition of probation, the court

state law "killer statutes" and denying Newman's claim on her late husband's pension fund).

[6] The State also cites *United States v. Gaudet*, 966 F.2d 959 (5th Cir. 1992). Although the facts in *Gaudet* are very similar to the present case—a defendant arguing that the trial court cannot order that his pension plan be transferred to victims to satisfy restitution—the defendant in *Gaudet* did not raise the issue before the trial court. The Fifth Circuit therefore reviewed the order for plain error, and concluded that, although the defendant had a strong legal argument, the court's order did not amount to plain error. The *Gaudet* decision is not helpful here because Kenyon did argue at the restitution hearing that the order requested was prohibited by the plan's anti-alienation clause.

667

ordered restitution in an amount in excess of $63,000. The supreme court commented:

> At the sentencing hearing, [the court] clearly stated numerous times that the decision to place Dziuba on probation with a condition of restitution, rather than sending him to prison, was based on the fact that Dziuba's equity in his house would allow him to pay much, if not all, of his restitution obligation. If Dziuba had been sentenced to prison, he most likely would have defaulted on his mortgage obligations, lost [sic] all equity in the home which would have precluded any meaningful restitution. Without objection, Dziuba accepted the punishment structure. . . .

*Id.* at 110, 435 N.W.2d at 259.

On appeal, Dziuba argued that the equity in his home was protected by the Homestead Act and the Wisconsin Constitution.

The supreme court concluded:

> Since fulfilling restitution ultimately could occur only by using the equity in his home, and because the defendant did not object to the sentence imposed by the trial court which would have given it an opportunity to impose an alternative sentence, he is now estopped from claiming that the equity in his home is protected from application to restitution.
>
> In *Mercado v. Mitchell*, 83 Wis. 2d 17, 26–27, 264 N.W.2d 532 (1978), the court stated: "There are three elements to equitable estoppel: (1) Action or inaction which induces, (2) reliance by another, (3) to his detriment."
>
> The trial court and the prosecutor relied on the defendant's silence and believed the probation with conditions attached was satisfactory to him. One of the main components of the probation was the order

668

for restitution. If the defendant is allowed to avoid the application of the equity in his home to restitution, the punishment imposed will be substantially undermined.

*Id.* at 114–15, 435 N.W.2d at 261 (citations omitted).

Arguably, Kenyon, like the defendant in *Dziuba*, acquiesced in the restitution order at the sentencing hearing. However, unlike the facts in *Dziuba*, the prosecutor did not rely on this action or inaction: the prosecutor in this case argued for two lengthy prison terms and did not mention restitution. And, unlike the trial court in *Dziuba*, the court here did not state that it was imposing probation instead of sending Kenyon to prison so that Kenyon would be able to use his pension fund to pay restitution. Indeed, there is no necessity that Kenyon *not* be incarcerated in order to have the fund available for restitution, as there was in *Dziuba*. Moreover, the trial court here did in fact send Kenyon to prison. Without the critical element of reliance, equitable estoppel does not apply.

We have also considered whether the equitable doctrine of judicial estoppel applies. That doctrine is intended "to protect against a litigant playing 'fast and loose with the courts' by asserting inconsistent positions." *State v. Petty*, 201 Wis. 2d 337, 347, 548 N.W.2d 817, 820 (1996) (quoting *State v. Fleming*, 181 Wis. 2d 546, 557, 510 N.W.2d 837, 841 (Ct. App. 1993)). The supreme court has adopted three "identifiable boundaries" of judicial estoppel: (1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position—a litigant is not forever

bound to a losing argument. *Petty*, 201 Wis. 2d at 348, 548 N.W.2d at 821.

■

In this case Kenyon's argument on appeal, and at the restitution hearing, is inconsistent with his position at the sentencing hearing, and the facts are the same. However, there is nothing in the record to show that the trial court adopted Kenyon's position at sentencing. The court sentenced Kenyon to prison and concurrent probation, not to straight probation with restitution as Kenyon advocated, and did not specify the source or amount of restitution at sentencing. The State did not raise an estoppel argument at the restitution hearing. Although the trial court was aware at the hearing that Kenyon was challenging its authority to order that he withdraw the funds from his pension plan, the court did not indicate that it had relied on Kenyon's restitution arguments at sentencing and adopted Kenyon's position as to count two. This record therefore does not support the conclusion that Kenyon is judicially estopped from arguing the trial court's order is preempted by ERISA's anti-alienation clause.[7]

Because the trial court erred in ordering Kenyon to withdraw and transfer funds from his retirement plan and insurance policy, we reverse and remand to the trial court to vacate that part of the order that directs

---

[7] As part of its estoppel argument, the State cites the Tenth Circuit's decision of *Guidry* on remand and other cases for the proposition that once the funds are withdrawn from the pension fund, they are no longer protected by the anti-alienation provisions of ERISA. *See Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 39 F.3d 1078, 1083 (10th Cir. 1994). In light of our conclusion that ERISA preempts the trial court's order to withdraw the funds, we need not reach this issue.

Kenyon to withdraw and transfer the funds protected by ERISA's anti-alienation clause.

*By the Court.*—Order reversed and cause remanded with directions.