**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**September 17, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.   2017AP2087-CR**

Cir. Ct. No. 2015CF486

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT III**

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

V.

LARRY C. LOKKEN,

  DEFENDANT-APPELLANT.

        APPEAL from a judgment and an order of the circuit court for Eau Claire County:  JON M. THEISEN, Judge.  *Affirmed in part; reversed in part and cause remanded with directions.*

        Before Stark, P.J., Hruz and Seidl, JJ.

        ¶1     SEIDL, J.  Larry Lokken appeals a judgment convicting him of three counts of misconduct in office and five counts of theft in a business setting, as a party to the crime, each of an amount greater than $10,000.  He also appeals

an order denying his motion for postconviction relief. Lokken argues that the circuit court unlawfully sentenced him on one of the theft counts and that he is therefore entitled to resentencing on all counts before a different judge. Specifically, Lokken asserts the court: (1) imposed a sentence unauthorized by statute; (2) ordered an unreasonable amount of restitution as a condition of his probation; and (3) inadequately explained how its sentence met the minimum custody standard.

¶2 We reject Lokken's arguments, with one exception. Namely, we agree with Lokken that the circuit court exceeded its authority by ordering that a stay on an imposed and stayed sentence is "to be lifted" if Lokken fails to satisfy a condition of his probation. We therefore affirm in part, reverse in part, and remand for the court to amend the judgment of conviction to conform to this decision.[1]

## BACKGROUND

¶3 A criminal complaint charged Lokken and his co-defendant, Kay Onarheim, each with eleven counts of theft in a business setting, as parties to the crime, each of an amount greater than $10,000, and with three counts of misconduct in office. The complaint alleged that Lokken, the long-time Eau Claire County Treasurer, and Onarheim, Lokken's office manager, stole $625,758.22 from the county between 2011 and 2013.

---

[1] We originally decided this case on June 18, 2019, and Lokken filed a motion for reconsideration. We granted Lokken's motion and withdrew our original opinion. This modified opinion follows our reconsideration of that opinion.

¶4     At Lokken's initial appearance, the State requested that the circuit court impose a $250,000 cash bond.[2]  In support, the State argued that Lokken was currently selling properties he owned in Wisconsin and Florida and that he had recently made comments indicating he intended to "live somewhere tucked away after those properties are sold."  Lokken's counsel responded that although Lokken did intend to sell those properties so that he could "buy a larger place" in Florida, he was "not planning on moving out of the country or hiding from anyone."  Ultimately, the court imposed a $7500 cash bond, which Lokken posted.

¶5     Two months later, Lokken moved the circuit court to modify a condition of his bond that restricted his out-of-county travel so that he could travel to Florida to finalize the purchase of a new home.  The court granted this request.

¶6     The parties subsequently reached a plea agreement, which required Lokken to plead no contest to the three counts of misconduct in office and to five of the theft counts.  Further, the agreement required Lokken to stipulate to paying $625,758.22 in restitution.  In exchange, the State agreed to: (1) recommend that the remaining charges against Lokken be dismissed and read in; (2) file no additional charges against Lokken arising out of the same course of conduct; (3) file no   charges against Lokken's wife; and (4) cap its sentence recommendation at six-and-one-half years' initial confinement and seven years' extended supervision.

---

[2] The Honorable William M. Gabler presided over Lokken's initial appearance.  The Honorable Jon M. Theisen presided over all subsequent proceedings.

¶7      On November 9, 2015, the circuit court accepted Lokken's no-contest pleas to the three counts of misconduct in office and five of the theft counts.  The court then set the matter for sentencing on January 21, 2016.

¶8      On December 18, 2015, the circuit court held a status conference for both Lokken and Onarheim.[3]  During this hearing, the court informed the parties that it "perceive[d]" repayment of the stolen funds to be the "first thing" on the list of public concerns at sentencing.  To that end, the court stated it "was thinking that it might behoove somebody to … have an accountant" investigate and determine "where [Lokken's and Onarheim's] assets are … where they stand."

¶9      Onarheim's counsel then informed the circuit court that she was "placing her home for sale to pay all the proceeds to the county."  In turn, Lokken's counsel informed the court that Lokken's Wisconsin home was still for sale, but that his Florida home had been sold and "another purchased with those proceeds."

¶10     After that discussion, the circuit court stated it "sense[d] an increased tension" in the community.  The court also noted that public threats had been made against Lokken.  Accordingly, the court decided to revoke both Lokken's and Onarheim's bonds, stating they would be "safer as individuals incarcerated."  The court further justified its decision to revoke bond by stating it had "not heard anything that says [Lokken or Onarheim] were using the

---

[3] The appellate record indicates that, prior to Lokken entering his pleas, Onarheim entered pleas to the same eight felony charges as Lokken.

opportunity of being out on bond to earnestly come up with finances [to] make the restitution payment."[4]

¶11    The presentence investigation report (PSI) recommended that "paying the court-ordered restitution should be Mr. Lokken's highest priority and area of need." An alternate defense PSI submitted by Lokken also stated that Lokken had "the ability and willingness to pay restitution."

¶12    At sentencing, the circuit court began by confirming with Lokken and the State that they were stipulating to a restitution amount of $625,758.22, joint and several with Onarheim. The State then recommended a sentence consistent with the plea agreement. While making its sentencing recommendation, the State noted that although the charged offenses covered only $625,758.22 in missing funds, further investigation had "determined … that an additional amount of $762,579.21 was missing."

¶13    Lokken's counsel argued for a sentence of "long-term probation … and that he pay the restitution." Regarding Lokken's ability to pay, counsel informed the circuit court that Lokken had recently sold an automobile for $10,000, all of which proceeds Lokken intended to contribute toward the restitution ordered by the court. Counsel also stated that "just yesterday an offer, a cash offer has been made on the [Wisconsin] home … so assuming that that can be consummated, those proceeds will be going to [the county]."

---

[4] After the hearing, both Lokken and Onarheim moved to recuse Judge Theisen. Judge Theisen summarily denied these motions without holding a hearing. After the State requested that Judge Theisen make a "complete record" of his decision, however, he issued a written addendum stating he was not subjectively biased and that "no act, condition or status of the Court gives the appearance that the Court cannot be fair and impartial."

¶14     The circuit court imposed a bifurcated prison sentence totaling nine and one-half years' initial confinement and eleven years' extended supervision. This prison sentence was comprised of consecutive sentences on four of the counts to which Lokken pled no contest:  the three misconduct in public office counts and one of the theft counts.   The court withheld sentence on three of the four remaining theft counts and imposed ten years' probation, concurrent on each count and concurrent with the prison sentence.

¶15     As to the final theft count (Count 2), the circuit court imposed and stayed a sentence of five years' initial confinement and five years' extended supervision, consecutive to the prison sentence.[5]  The court then placed Lokken on ten years' probation on Count 2, explaining:

> On [Count 2] of the probation, I put conditional jail time of five years initial confinement [and] five years extended supervision consecutive to [the prison sentence] … imposed but stayed.
>
> ….
>
> The stay on the conditional jail on the probation, conditional prison actually, will be lifted unless the restitution joint and several is paid in full within four-and-a-half years.[6]

---

[5]  We refer to this specific theft count as "Count 2" for the remainder of this opinion.

[6]  Although the circuit court initially ordered restitution in the amount to which the parties had stipulated ($625,758.22), Lokken and the State later stipulated to a final restitution figure of $681,846.92.   This increase reflected an additional $29,740.70 for a forensic audit, $25,000 for an insurance deductible, and $1348 for "miscellaneous costs."   Lokken does not argue that the $56,088.70 difference between the initial and final restitution amount is material to any issue raised on appeal, and we will not discuss the issue further.

In accordance with the court's oral pronouncement, the written judgment of conviction states: "Count 2, 5 years Prison Imposed and Stayed ~ Stay to be lifted if restitution joint and several not paid in full within 4.5 years."

¶16 Lokken filed a postconviction motion seeking resentencing before a different judge. As grounds, he argued that the circuit court had imposed an illegal sentence on Count 2 and, on all counts, had failed to adequately explain its sentence. He also appeared to argue that, should resentencing be granted, Judge Theisen should be disqualified for being both subjectively and objectively biased. The court denied Lokken's motion in a written decision. Lokken now appeals.

## DISCUSSION

### I. Legality of the Count 2 sentence

¶17 On appeal, Lokken first argues that the circuit court "imposed a prison/probation hybrid [on Count 2] that is unlawful because it is not authorized by statute." Generally, sentencing is a matter committed to the circuit court's discretion. *State v. Holloway*, 202 Wis. 2d 694, 697, 551 N.W.2d 841 (Ct. App. 1996). However, the ability of a court to impose a criminal disposition must be derived from statutory authority. *State v. Galvan*, 2007 WI App 173, ¶7, 304 Wis. 2d 466, 736 N.W.2d 890. As such, we review a claim that a particular disposition contravenes a court's statutory authority de novo. *Holloway*, 202 Wis. 2d at 697.

¶18   WISCONSIN STAT. § 973.09(1)(a) (2017-18)[7] authorizes probation as a possible disposition for an individual who has been convicted of a crime. *See State v. Schwind*, 2019 WI 48, ¶24, 386 Wis. 2d 526, 926 N.W.2d 742.   Under that statute, "the legislature has chosen to allow sentencing courts to either withhold sentencing, or impose a sentence but stay its execution, and instead release the individual into the community subject to 'any conditions which appear to be reasonable and appropriate' to the court." *Id.* (quoting § 973.09(1)(a)). "Reasonable and appropriate conditions of probation may, in the circuit court's discretion, include a period of confinement not to exceed one year." *Id.*, ¶24 n.4 (citing § 973.09(4)(a)).

¶19   Lokken contends that the circuit court's sentence on Count 2 violated WIS. STAT. § 973.09(4)(a) because it included an incarceration condition of probation in excess of one year.   He reasons that his five-year terms of imprisonment and extended supervision are conditional "in the sense … [that] custody is triggered at the 4.5 year mark unless full restitution is paid beforehand."

¶20   We reject Lokken's argument because it confuses a consequence of his failure to abide by a condition of probation with a condition of the probation itself.[8]   To explain, the circuit court did not order that Lokken serve a conditional prison sentence as a condition of his probation.   Rather, the court ordered that one

---

[7] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[8] We note that the State's response brief challenged the apparent assertion in Lokken's brief-in-chief that he received a withheld sentence, as opposed to an imposed and stayed sentence, on Count 2.   However, Lokken clarified in his reply brief that he "has never argued that the sentence was withheld," and he acknowledged that his sentence on Count 2 was, in fact, imposed and stayed.

of the conditions of Lokken's probation be that he fully repay his restitution amount within the first four and one-half years of the probationary term. To be sure, a potential consequence of his failure to do so, should the Wisconsin Department of Corrections (DOC) decide to initiate revocation proceedings, is the commencement of his imposed and stayed sentence. But such a result is what WIS. STAT. § 973.09 authorizes: a form of "supervised, *conditional* freedom." *Schwind*, 386 Wis. 2d 526, ¶24 (emphasis added). Consequently, we reject Lokken's argument that the court unlawfully imposed a condition of probation that included a period of confinement in excess of one year.

¶21 Lokken next argues that the circuit court's sentence on Count 2 violated WIS. STAT. § 973.10(2)[9] because the court "mandated" that his probation be revoked if he does not fully repay his restitution within the first four and one-half years of his probationary term.[10] More specifically, he asserts "the

---

[9] WISCONSIN STAT. § 973.10(2) provides, in relevant part:

> If a probationer violates the conditions of probation, the department of corrections may initiate a proceeding before the division of hearings and appeals in the department of administration. Unless waived by the probationer, a hearing examiner for the division shall conduct an administrative hearing and enter an order either revoking or not revoking probation. Upon request of either party, the administrator of the division shall review the order. If the probationer waives the final administrative hearing, the secretary of corrections shall enter an order either revoking or not revoking probation.

[10] In our original opinion, we concluded that this issue was not ripe for adjudication because its resolution depended on hypothetical or future facts—i.e., whether Lokken would, in fact, fail to timely pay his restitution amount and whether the DOC would move to revoke his probation if he failed to do so. However, we agree with Lokken's argument, presented in his

(continued)

9

sentence on [Count 2] prevents the executive branch [the DOC] from exercising its valid statutory authority to determine whether to initiate revocation." In so arguing, he notes the judgment of conviction explicitly states that the stay on Count 2 is "to be lifted if restitution joint and several not paid in full within 4.5 years."

¶22     Under WIS. STAT. § 973.10(2), the "executive branch has exclusive statutory authority to administer and to revoke probation." *State v. Burchfield*, 230 Wis. 2d 348, 349, 602 N.W.2d 154 (Ct. App. 1999). To that end, we have recognized that when a circuit court imposes a sentence but stays its execution while the defendant serves a probationary term, the "court has no authority to revoke [the defendant's] probation." *Id.*

¶23     As such, we conclude that the circuit court exceeded its authority to the extent it ordered the stay on Lokken's imposed sentence "to be lifted" if he fails to abide by the conditions of his probation.[11] This conclusion follows because it must be left to "the executive branch to determine whether [Lokken] has violated the conditions of [his] probation to such a degree as to warrant revocation." *See State v. Horn*, 226 Wis. 2d 637, 651, 594 N.W.2d 772 (1999).

motion for reconsideration, that while the factual basis for Lokken's challenge is not ripe for our consideration, a defendant has the current right to challenge the legality of a condition of probation, even though future facts upon which the challenge depends have not yet occurred. *See State v. Rowan*, 2012 WI 60, ¶17, 341 Wis. 2d 281, 814 N.W.2d 854 (examining legality of a condition of extended supervision that authorized suspicionless searches of defendant's property while "noting that no actual search has yet been conducted."). Therefore, we conclude this issue is ripe for our consideration.

[11] To be clear, as we explain in the following section, the circuit court had the authority to order a specific amount of time within which Lokken must pay his restitution amount. The court only exceeded its authority to the extent that it, rather than the DOC, determined the consequence (i.e., the lift of the stay) for Lokken's failure to comply with the restitution payment condition of probation.

Accordingly, on remand we direct the circuit court to amend that portion of the judgment of conviction relating to Count 2 that states: "Stay to be lifted if restitution joint and several not paid in full within 4.5 years" to read "Condition of Probation: Restitution joint and several to be paid in full within 4.5 years."[12]

## II. Reasonableness of restitution

¶24 Lokken next contends that the circuit court "imposed an unreasonable and therefore unlawful condition of probation" because the court ordered a "massive sum of money" be paid in restitution.[13] As indicated, a sentencing court has discretion under WIS. STAT. § 973.09(1)(a) to impose any conditions which appear to be reasonable and appropriate when placing an individual on probation. *See Schwind*, 386 Wis. 2d 526, ¶24. Such conditions may include the payment of restitution. Sec. 973.09(1)(b). Moreover, the court has the discretion to require that "restitution be paid immediately, within a specified period, or in specified installments." WIS. STAT. § 973.20(10)(a). Consequently, we will not disturb a court's restitution order unless the court has

---

[12] In his motion for reconsideration, Lokken proposed this modification to the judgment of conviction. We subsequently ordered the State to respond to Lokken's motion. In its response, the State maintained its original position that Lokken's challenge to the legality of his condition of probation was not ripe for adjudication. However, the State also acknowledged that if we were to consider the merits of Lokken's argument it "would not object to Lokken's proposed modification."

[13] Lokken contends that because the State "does not address any of the cases cited" by Lokken in support of this argument, we should "deem the State to have conceded the arguments presented." Even assuming that the State's failure to specifically address the cases cited by Lokken constitutes a concession of the issue, we choose to exercise our discretion to address this issue on the merits. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

erroneously exercised its discretion. *State v. Madlock*, 230 Wis. 2d 324, 329, 602 N.W.2d 104 (Ct. App. 1999).

¶25 We conclude that Lokken has forfeited any challenge to the reasonableness of the circuit court's restitution order. This conclusion is compelled by the fact that Lokken stipulated to the restitution amount set by the court. *See Cascade Mountain, Inc. v. Capitol Indem. Corp.*, 212 Wis. 2d 265, 269, 569 N.W.2d 45 (Ct. App. 1997) ("A party cannot complain about an act to which he or she deliberately consents.").

¶26 Even if we were to ignore Lokken's forfeiture by stipulation, the record belies Lokken's assertion that the circuit court's restitution order was unreasonable. We reach this conclusion for several reasons. First, the court ordered that the restitution be paid jointly and severally with Onarheim. Thus, the court required that two people contribute to the—in Lokken's words—"massive sum of money" due in restitution. That may very well lessen the sum Lokken is ultimately required to pay.

¶27 Second, as part of his plea, Lokken stipulated to there being a factual basis for the State's allegation that he and Onarheim stole $625,758.22. As neither Lokken nor Onarheim ever explained to the circuit court where those stolen funds went, the court could—and apparently did—reasonably infer that Lokken or Onarheim had either hidden those funds or transferred them to third parties. That inference provided a reasonable basis for the court to order the high amount of restitution because it could either: (1) incentivize Lokken or Onarheim to return any hidden funds; or (2) incentivize third-party recipients of the stolen funds to return them.

¶28 Third, the record contained evidence that Onarheim had stolen an additional $762,579.21 during time periods not covered by the charges against either her or Lokken. The circuit court could reasonably conclude on this basis that there was a large, untapped resource that either Onarheim or Lokken could access to satisfy their joint restitution obligation.

¶29 Fourth, an alternate defense PSI submitted by Lokken stated that Lokken had "the ability and willingness to pay restitution." Lokken (and Onarheim) undisputedly had assets available to liquidate in order to facilitate the payment of restitution. In Lokken's case, his assets included his Wisconsin home, his recently purchased Florida home, and retirement accounts containing significant sums. Regarding the retirement funds, the circuit court properly recognized that it could not order Lokken to withdraw and transfer his pension funds as a condition of probation. *See* ***State v. Kenyon***, 225 Wis. 2d 657, 663, 593 N.W.2d 491 (Ct. App. 1999). However, the court also recognized that regardless of the fact that it could not order Lokken to withdraw and transfer those funds, Lokken himself remained free to access his funds in order to satisfy his restitution obligation. To that end, the court properly determined that its restitution order could serve as a means by which to influence the payment of funds not accessible in any other way.

¶30 Finally, the circuit court's restitution order was reasonable because it furthered one of the primary purposes of WIS. STAT. § 973.20: to compensate victims. *See* ***State v. Greene***, 2008 WI App 100, ¶13, 313 Wis. 2d 211, 756 N.W.2d 411. Lokken and Onarheim unquestionably deprived the victims in this case, the taxpayers of Eau Claire County, of a significant—and ascertainable—sum of money. For all these reasons, we conclude that even if Lokken had not

13

stipulated to the restitution amount, the court did not erroneously exercise its discretion in ordering restitution.

## III. Minimum custody standard

¶31  Finally, Lokken contends that he is entitled to resentencing because the circuit court failed to explain how its sentences met the minimum custody standard.  The minimum custody standard refers to the well-recognized principle that the sentence imposed in each case should call for the minimum amount of custody or confinement which is consistent with three primary sentencing factors:  (1) the protection of the public; (2) the gravity of the offense; and (3) the rehabilitative needs of the defendant.  *See State v. Gallion*, 2004 WI 42, ¶23, 270 Wis. 2d 535, 678 N.W.2d 197.  The weight a sentencing court gives to each of these factors lies within the court's discretion.  *State v. Davis*, 2005 WI App 98, ¶12, 281 Wis. 2d 118, 698 N.W.2d 823.  Based upon the strong policy against this court's interference with the discretion of a circuit court in passing sentence, a defendant bears the burden to show some unreasonable or unjustifiable basis in the record to rebut the presumption that the court acted reasonably.  *Id.*

¶32  Here, Lokken has failed to rebut the presumption that the circuit court's sentence was reasonable.  To the contrary, the record shows that the court considered all of the primary sentencing factors and properly weighed them before issuing its sentence.

¶33  Regarding the protection of the public, the circuit court stated, "there is a need to protect the community from [theft by a public official].  Perhaps … Lokken is no longer in a position to cause [any more] damage.  However, one part of a sentence can and should be to send a message that this will not be tolerated."  As to the gravity of the offense, the court stated, "You have destroyed public trust.

14

You have destroyed public confidence. You have given ammunition to the cynics. You have committed an affront against anyone who would consider public service." Finally, the court considered the possibility of rehabilitation but ascribed it little weight because it "didn't hear anything which indicated that [Lokken's crimes were] the result of addiction."

¶34 For those reasons, the circuit court found that "[p]robation alone clearly unduly depreciates the seriousness of these offenses. The court considers probation, but rules against it as a sentence in and of itself." With regard to Count 2 specifically, the court stated it was imposing and staying its sentence in an attempt to give Lokken the "option or opportunity for you to make the arrangements that the victim is made whole thereby alleviating you of an additional five years of incarceration, five years extended supervision."

¶35 We conclude that the foregoing demonstrates the circuit court considered the proper sentencing factors, explained why a period of probation alone did not meet the minimum custody standard, and provided a reasonable basis for the sentences the court ultimately imposed. Therefore, Lokken has failed to show that the court's sentences were either unreasonable or unjustifiable, and we sustain the court's exercise of its sentencing discretion.

¶36 Accordingly, and for reasons set forth above, we reverse in part and remand to the circuit court. On remand, the circuit court shall amend Lokken's judgment to conform to this decision.[14]

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.

Not recommended for publication in the official reports.

---

[14] We note that Lokken raises two additional, related arguments. First, he argues that if we conclude that the circuit court imposed an illegal sentence on Count 2, we should order resentencing on all counts. Second, he argues that any resentencing should proceed before a different judge because Judge Theisen is objectively biased against him. Given that we remand solely for the court to amend Lokken's judgment of conviction, and not for resentencing on any count, we need not address either argument. *See Clark v. Waupaca Cty. Bd. of Adjustment*, 186 Wis. 2d 300, 304, 519 N.W.2d 782 (Ct. App. 1994). To the extent that we have not addressed an argument Lokken raised on appeal, the argument is deemed rejected. *See State v. Waste Mgmt., Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978).