STATE of Wisconsin,
Plaintiff-Respondent,

v.

Lonnie C. DAVIS,
Defendant-Appellant.

Court of Appeals

*No. 04–1163–CR. Submitted on briefs February 2, 2005.
—Decided March 8, 2005.*

2005 WI App 98

(Also reported in 698 N.W.2d 823.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Pamela Moorshead*, Glendale.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general by *William C. Wolford*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. WEDEMEYER, P.J. Lonnie C. Davis appeals from a judgment entered after a bench trial wherein he was found guilty of four counts of second-degree sexual assault, use of force, contrary to WIS. STAT. § 940.225(2)(a) (1993–94). He also appeals from an order denying his postconviction motion seeking resentencing. Davis claims: (1) the trial court erroneously exercised its sentencing discretion by failing to consider the fact that he was fourteen years old at the time of the offenses; (2) the sentence imposed constituted cruel and unusual punishment in violation of the Eighth Amendment; (3) the trial court failed to adequately explain why it imposed the maximum possible sentence and why it ordered each sentence to run consecutively; and

(4) the trial court erred in finding that the complaint filed before the statute of limitations expired, which identified Davis only by a DNA profile, was sufficient. Because the trial court properly exercised its sentencing discretion and because the complaint was sufficient, we affirm.

## BACKGROUND

¶ 2. On September 10, 1994, at approximately 9:10 p.m., the victim, Kylesia R., was walking home from her job at Taco Bell. As she was walking near the area of 2100 North 20th Street in the City of Milwaukee, an unknown male approached her and demanded her purse. Kylesia responded that she did not have any money. The perpetrator then told her to raise her shirt, lift her bra, and shake it to make sure she was not hiding any money in her bra. Kylesia complied with the request. Subsequently, the perpetrator reached to the back of his waistband as if he was going to pull out a gun. Kylesia believed he had a gun. He told her that if she ran or screamed for help, he would kill her.

¶ 3. Davis then grabbed Kylesia's arm and led her to a secluded park. He told her to "strip." She removed her pants and underwear and Davis pushed her to the ground. He then inserted his penis into her vagina from behind her while she was on her knees. He pushed her head into the ground and her mouth became full of grass. This assault lasted about five minutes. Davis then walked around to face Kylesia and told her to "Suck my dick." He then placed his penis into her mouth. This assault lasted about three minutes. Then Davis attempted penis-to-anus intercourse, but could not penetrate the anus. He then inserted his finger into her anus and opened her purse. He found a bottle of lotion, and put some of the lotion on his penis. He then

124

completed the act of penis-to-anus intercourse. Kylesia began to cry and he told her to shut-up.

¶ 4. Throughout all of the assaults, he repeatedly asked Kylesia if it "felt good" and if she liked it. He also continued to threaten her. After the penis-to-anus assault, he completed another act of penis-to-vagina intercourse for approximately five minutes. He then removed his penis from her vagina and ejaculated on her back. After that, he got up, grabbed her bag of food from Taco Bell and left. Kylesia put her underwear and pants back on, went home, and immediately called the police to report the assaults.

¶ 5. A nurse examined Kylesia and secured as evidence the underwear she was wearing at the time of the assaults. Semen was obtained from the underwear and a DNA analysis was performed, using the Restriction Fragment Length Polymorphism (RFLP) technique. The DNA profile from the analysis was run through the convicted offender index of the Wisconsin DNA databank, but no match to the profile was found.

¶ 6. In 1997, Davis was convicted for sexually assaulting a different victim. He was sentenced to 105 years in prison and was required to provide a DNA sample. On August 30, 2000, shortly before the statute of limitations was due to expire in Kylesia's case, the State filed a criminal complaint and obtained an arrest warrant identifying the perpetrator of Kylesia's assaults as "John Doe" with the particular DNA profile identified from the semen in Kylesia's underwear. John Doe was charged with one count of forcible kidnapping and six counts of second-degree sexual assault.

¶ 7. In 1998 and 1999, the State crime lab began transitioning from the RFLP-DNA technique to a new DNA technology known as Polymerase Chain Reaction (PCR). Because RFLP profiles and PCR profiles are not

comparable, the State began to re-analyze all of the evidentiary samples in its databank. When the DNA profile in this case was re-analyzed and the new PCR-DNA profile was compared to those in the Wisconsin databank, it was determined that a match was found. The PCR-DNA profile in this case matched that of convicted sex-offender Lonnie Davis.

¶ 8. On April 24, 2002, pursuant to a search warrant, an oral swab was taken from Davis and DNA testing was conducted on that swab. A comparison between the DNA from the swab and the DNA from the semen in Kylesia's underwear was conducted. The conclusion was that the DNA from both matched and the only reasonable scientific explanation was that Davis was the source of the semen in Kylesia's underwear.

¶ 9. An amended complaint was filed substituting Davis for John Doe and the case proceeded to trial. Davis waived his right to a jury trial in exchange for the dismissal of the kidnapping charge and two counts of sexual assault. The case was tried to the court. Davis stipulated to the facts presented by the State and did not present any defense. He was found guilty by the court. At sentencing, Davis maintained that he was innocent and did not accept responsibility for his actions. In his allocution to the court, he stated that he did not care what sentence was imposed because he was already serving 105 years in prison.

¶ 10. The prosecutor recommended a sentence of ten years on each count, to be served consecutively. Defense counsel asked for a prison term of "half" of what the State recommended. The court imposed the sentence requested by the State. Davis filed a postconviction motion seeking modification of his sentence, which was denied. He now appeals.

## DISCUSSION

*A. Sentencing Issues.*

■

¶ 11. Davis's first argument is that the trial court erroneously exercised its sentencing discretion by failing to consider his "youth." He was fourteen years, nine months old at the time these crimes were committed. We reject Davis's contention.

■

¶ 12. There is a consistent and strong policy against interference with the discretion of the trial court in passing sentence. *State v. Paske,* 163 Wis. 2d 52, 61–62, 471 N.W.2d 55 (1991). This policy is based on the great advantage the trial court has in considering the relevant factors and the demeanor of the defendant. *State v. Harris,* 119 Wis. 2d 612, 622, 350 N.W.2d 633 (1984). Furthermore, the trial court is presumed to have acted reasonably, and the burden is on the appellant to show some unreasonable or unjustifiable basis in the record for the sentence. *State v. Thompson,* 172 Wis. 2d 257, 263, 493 N.W.2d 729 (Ct. App. 1992). A trial court's sentence is reviewed for an erroneous exercise of discretion. *Paske,* 163 Wis. 2d at 70.

■

¶ 13. It is similarly well-established and undisputed by the parties in this case, that trial courts must consider three primary factors in passing sentence. Those factors are the gravity of the offense, the character of the defendant, and the need to protect the public. *Id.* at 62. The weight to be given to each of the factors, however, is a determination particularly within the discretion of the trial court. *Ocanas v. State,* 70 Wis.

2d 179, 185, 233 N.W.2d 457 (1975). After consideration of all relevant factors, the sentence may be based on any one of the three primary factors. *State v. Krueger*, 119 Wis. 2d 327, 338, 351 N.W.2d 738 (Ct. App. 1984).

¶ 14. The sentencing court may also consider additional factors including,

> the defendant's criminal record, history of undesirable behavior patterns, personality and social traits, results of a presentence investigation, the aggravated nature of the crime, degree of culpability, demeanor at trial, remorse, repentance and cooperativeness, educational and employment history, the need for close rehabilitative control and the rights of the public.

*State v. Lewandowski*, 122 Wis. 2d 759, 763, 364 N.W.2d 550 (Ct. App. 1985). A defendant's age is also a secondary factor, which may be considered by the trial court in fashioning an appropriate sentence. *State v. Macemon*, 113 Wis. 2d 662, 667–68, 335 N.W.2d 402 (1983).

¶ 15. Finally, a sentence is unduly harsh only if the length of the sentence imposed by a trial court is "so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Ocanas*, 70 Wis. 2d at 185.

¶ 16. A review of the sentencing transcript demonstrates that the trial court did not erroneously exercise its discretion when it sentenced Davis. The trial court addressed the three primary factors and several of the secondary factors. Moreover, although the trial court did not specifically mention that Davis was fourteen years old when he committed these crimes, the

trial court did note in the order denying Davis's post-conviction motion that it was aware of Davis's young age when it imposed the sentence. The trial court indicated that it did not assign specific weight to that factor because of the very severe nature of the crimes. As noted above, the trial court is free to assign weight to the factors it deems appropriate. Here, the nature of the offense was the factor assigned the most weight. The court noted that these assaults were aggravated and probably the most graphic, serious assaults it had seen. Davis's conduct was horrendous and "animal-like."

■■■

¶ 17. In its order denying the postconviction motion, the trial court explained further that: "This was not a case of adolescent indiscretion or impulsive teenage behavior. This case was about a vicious, predatory, animalistic, dehumanizing attack on an unsuspecting victim." It is clear from the record that the trial court was aware of Davis's young age, but that the youth factor did not operate to significantly mitigate the appropriate sentence. This did not render the trial court's decision erroneous.

■■■

¶ 18. The trial court is not required to consider a defendant's age because it is a secondary factor; moreover, even if age is addressed, the trial court determines whether it should carry any weight. Davis cites two cases from the Supreme Court for the proposition that youth is a mitigating factor at sentencing. *See Eddings v. Oklahoma*, 455 U.S. 104 (1982); *Thompson v. Oklahoma*, 487 U.S. 815 (1988). The holdings in these cases do not alter our conclusion here that the trial court properly exercised its discretion when it imposed Davis's sentence.

129

¶ 19. Both *Eddings* and *Thompson* involved imposition of the death penalty. That was not the case here. These Supreme Court cases do not require a trial court to give overriding mitigating significance to the young age of a defendant who has committed a serious crime. In other words, the youth factor does not automatically outweigh all of the other sentencing factors. Here, after considering the specific facts and circumstances pertinent to Davis's crimes, the trial court gave the severity of the crime the most weight. The trial court also concluded that Davis had a very poor character, evidenced in part by his refusal to accept responsibility for his actions despite the undisputable DNA evidence that linked him to this crime. Finally, the trial court found that Davis's refusal to acknowledge responsibility also goes to the risk of committing future acts and that the need to protect the community from Davis was extremely high. Clearly, the trial court determined that the three primary factors outweighed any mitigating effect that the young age may have offered. This did not constitute an erroneous exercise of discretion.

¶ 20. Davis next contends that the trial court imposed a sentence that constituted cruel and unusual punishment and was excessive. We disagree.

¶ 21. The test for whether a sentence violates the Eighth Amendment and whether a sentence was excessive are virtually identical in Wisconsin. In addressing the Eighth Amendment claim, we look to whether the sentence was "so excessive and unusual, and so disproportionate to the offense committed, as to shock public

130

sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *State v. Pratt*, 36 Wis. 2d 312, 322, 153 N.W.2d 18 (1967) (citations and internal quotation marks omitted). Likewise, as we have seen, a sentence is harsh only when it is "so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment or reasonable people concerning what is right and proper under the circumstances." *Ocanas*, 70 Wis. 2d at 185.

¶ 22. Here, Davis failed to satisfy both standards. The crimes Davis committed were horrendous. The lack of remorse was detestable. The impact on the victim was devastating. She has lived in fear since the night of the attack. She cannot work and is at times suicidal. The facts and circumstances of this case support imposition of the maximum sentence. There was nothing shocking about the trial court's decision to impose ten years on each count.

¶ 23. Davis argues that if he had been apprehended immediately after the crimes, he would have been tried in juvenile court and would not have faced the possibility of incarceration in adult prison. He is incorrect. The 1993–94 statutes permitted waiver into adult court of a fourteen-year-old child charged with kidnapping. *See* Wis. Stat. § 48.18(1)(a)1 (1993–94). Moreover, if the juvenile was waived into adult court, the statute permitted the district attorney to charge any other appropriate offenses for trial in adult court. *Id.*; *State v. Karow*, 154 Wis. 2d 375, 379–82, 453 N.W.2d 181 (Ct. App. 1990). Further, it would be unjust for this court to conclude that a juvenile who avoids apprehension until he is an adult should be given the benefit of his illegal actions. In sum, we cannot conclude that the

sentence imposed is either excessive or that it violates the Eighth Amendment.

¶ 24. Davis next contends that the trial court erroneously exercised its discretion when it imposed consecutive sentences without an adequate explanation of why that was the minimum amount of time necessary. We reject this claim.

¶ 25. The trial court explained why the maximum term was required in this case. It stated that these crimes were quite probably the most aggravated sexual assaults it had seen. It described Davis as having the poorest character. There is reference in the sentencing transcript to the callousness of Davis while he was committing the assaults and the fact that after the repeated violations of the victim over a period of forty-five minutes, he got up, took the victim's tacos, and walked away. The trial court explained that it was very concerned about the need to protect the community from Davis, who refused to acknowledge responsibility for the crimes he committed.

¶ 26. The trial court did note and gave Davis credit for not contesting the State's proof, which resulted in the victim not having to testify. Nonetheless, the trial court found that Davis's failure to accept that he was guilty of these crimes reflected poorly on his character. The trial court's explanation for imposing the maximum sentence complied with Wisconsin law. The court must provide an explanation for the general range of the sentence imposed, not for the precise number of years chosen, and it need not explain why it did not impose a lesser sentence. *State v. Gallion*, 2004 WI 42, ¶¶ 49–50, 54–55, 270 Wis. 2d 535, 678 N.W.2d 197. The trial court provided an adequate explanation for the general range of the sentence imposed.

¶ 27. We also conclude that there was an adequate explanation as to why consecutive rather than concurrent sentences were imposed. The trial court indicated that it was imposing consecutive sentences because each count was an independent act, independent of the other, and independent of the previous sentence Davis was currently serving. A trial court is permitted wide discretion in determining whether to impose a concurrent or consecutive sentence. *Paske*, 163 Wis. 2d at 61; WIS. STAT. § 973.15(2).

¶ 28. Here, the trial court found that it was appropriate to impose consecutive sentences. We agree. Davis violated the victim in four different ways in connection with the counts for which he was convicted. The four assaults, each charged as a separate count included penis-to-vagina, penis-to-mouth, penis-to-anus and finger-to-anus. The entire episode took approximately forty-five minutes to one hour. This was not a quick, brief, passing series of assaults that could be lumped into one event. Davis took his time and each event was separate and distinct. After Davis committed the penis-to-vagina assault, he could have stopped and walked away. He did not. After Davis could not penetrate the victim's anus, he could have aborted that assault. He did not. He searched her purse for some lotion, which he then used to allow him to penetrate the victim's anus. The same is true for the other two counts—Davis could have stopped and walked away. He did not. There is sufficient reason to impose consecutive rather than concurrent sentences under the facts and circumstances of this case.

*B. John Doe Complaint/Statute of Limitations Issue.*

■

¶ 29. Davis argues that the complaint filed in this case was insufficient to confer personal jurisdiction and therefore the amended complaint, which actually identified Davis by name, was filed after the statute of limitations expired. We reject Davis's arguments.

¶ 30. As noted earlier in this opinion, the State filed a "John Doe" complaint to initiate this case on August 30, 2000, twelve days before the expiration of the statute of limitations. The complaint identified the defendant by a particular DNA profile using the RFLP technique. The complaint stated that the DNA profile had been run against the convicted offender index of the Wisconsin DNA databank and no matches to the profile from known offenders were obtained.

¶ 31. On September 4, 2002, the State filed an amended criminal complaint in this case identifying Davis as the John Doe whose DNA profile matched that of the DNA retrieved from the semen in the victim's underwear. In 1998, the state crime lab stopped performing the RFLP-DNA analysis and converted to a new DNA technology known as PCR. The two technologies were different; one could not compare an RFLP-DNA profile to a PCR-DNA profile. As a result, during 1998 and 1999, the state crime lab re-analyzed all evidentiary samples which had previously generated RFLP-DNA profiles under the new PCR-DNA technology, so that the profiles could be compared to the offender database. When the sample in this case was re-analyzed producing a PCR-DNA profile, it was compared to all of the convicted offender samples in the database, and a match was found. Davis's DNA profile matched that of the PCR-DNA sample generated from

the semen in the victim's underwear. Based on this information, the State obtained a search warrant to take an oral swab directly from Davis, who was incarcerated. The DNA results from this oral swab also matched that of the DNA sample generated from the semen in the victim's underwear. Based on this information, the amended complaint charged Davis with the kidnapping and sexual assaults by substituting his name for that of John Doe.

¶ 32. Davis claims that this procedure violated the statute of limitations and should not be permitted. We disagree. We have previously ruled that the State is permitted to file a complaint, which identifies the defendant only by his DNA profile. *See State v. Dabney*, 2003 WI App 108, ¶ 15, 264 Wis. 2d 843, 663 N.W.2d 366. Davis acknowledges that *Dabney* permits this procedure, but contends that his case is distinguishable from *Dabney*.

¶ 33. Specifically, he argues that because the original complaint identified the DNA profile using a different technology than the amended complaint which eventually led to his identification, this case is distinguishable from *Dabney*. In other words, he suggests that because the RFLP-DNA profile identified in the complaint was not the profile used to identify him by name, the amended complaint does not relate back to a date preceding the expiration of the statute of limitations. We are not persuaded.

¶ 34. The DNA was the same. Both the RFLP-DNA profile and the PCR-DNA profile contained Davis's DNA exclusively. His argument elevates form over substance. The State specifically identified Davis's DNA in a complaint before the statute of limitations expired. The fact that the type of DNA analysis technology changed does not somehow alter the accuracy of

the identification. The person with the DNA in the original complaint was the same person with the DNA in the amended complaint—Davis. Thus, his claim that the analysis was different is of no consequence. His DNA did not change, but remained the same. Thus, it satisfied the reasonable certainty requirements for an arrest warrant and answered the "who is charged" question required for a sufficient complaint. *Id.* Thus, the trial court did not err in finding that the complaint was sufficient.

*By the Court.*—Judgment and order affirmed.