COURT OF APPEALS
DECISION
DATED AND FILED

July 27, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP1164-CR**

Cir. Ct. No. **2015CF76**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RYAN M. SWADNER,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Shawano County: WILLIAM F. KUSSELL, JR., Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Ryan Swadner appeals a judgment, entered upon his no-contest pleas, convicting him of three counts of homicide by operation of a

vehicle with a detectable amount of a restricted controlled substance, contrary to WIS. STAT. § 940.09(1)(am) (2019-20),[1] and one count of injury by operation of a vehicle with a detectable amount of a restricted controlled substance, contrary to WIS. STAT. § 346.63(2)(a)3. Swadner also appeals an order denying his motion for postconviction relief. He argues the circuit court erroneously exercised its sentencing discretion by viewing him as more culpable based on an incorrect conclusion that he was impaired by [tetrahydrocannabinol ("THC")] at the time of the vehicle crash, and by discounting Swadner's youth. Swadner argues, alternatively, that new factors justify sentence modification. We reject Swadner's arguments and affirm the judgment and order.

## BACKGROUND

¶2 The State charged Swadner with three counts of homicide by operation of a vehicle while having a detectable amount of a restricted controlled substance in his blood and three counts of second-degree reckless homicide. In the same complaint, he was charged with one count each of causing injury by operation of a vehicle while having a detectable amount of a restricted controlled substance in his blood; possession with intent to deliver THC; maintaining a drug trafficking place; possession of THC; and possession of drug paraphernalia.

¶3 All of the charges arose from a motor vehicle crash that occurred shortly before 5:30 p.m. on October 21, 2014. Swadner was driving a car on a two-lane highway with three passengers. A subsequent review of cell phone text messages showed that Swadner was transporting one of the passengers to sell

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

marijuana. Swadner approached a stopped vehicle that was waiting to make a left turn. Swadner attempted to pass the stopped vehicle on the right shoulder, lost control, and swerved back across the highway into the oncoming lane of traffic, where he was struck by an oncoming vehicle. All three passengers in Swadner's vehicle were killed. Swadner also suffered serious injuries. The driver of the approaching vehicle suffered an ankle injury.

¶4 A search of Swadner's vehicle uncovered plastic bags containing marijuana, glass smoking devices, and several cell phones. When he first spoke with police, Swadner claimed he had no memory of the crash. When confronted with the contraband from his vehicle, however, Swadner claimed that he had provided rides to a passenger in the past to purchase and deliver drugs; that a passenger owned the drugs and scale in his car; that he had smoked marijuana in the past; and if they had drugs and stopped somewhere, that he "probably would have smoked."

¶5 An amended complaint detailed the results of Swadner's postcrash blood test, which revealed a detectable amount of THC. Based on the opinion of a crash reconstructionist, the amended complaint asserted that Swadner's vehicle was traveling forty-six to fifty-five miles per hour when it attempted to pass on the highway shoulder.

¶6 Swadner pleaded no contest to all three charges of homicide by operation of a vehicle while having a detectable amount of a restricted controlled substance in his blood and the single misdemeanor charge of causing injury by operation of a vehicle while having a detectable amount of a restricted controlled substance in his blood. In exchange, the State agreed to request outright dismissal of the second-degree reckless homicide charges and the possession of THC and

drug paraphernalia charges. In addition, the State agreed to recommend that the possession with intent to deliver THC and maintaining a drug trafficking place charges be dismissed and read in. The State also agreed to recommend that the circuit court impose no more than eight years' initial confinement for each homicide conviction and one year initial confinement for the remaining conviction.

¶7 Swadner told the presentence investigation report author that he had smoked THC the day before the crash. Swadner denied, however, having knowledge either that one of his passengers was planning to meet with others to sell drugs or that the passenger brought drugs into his car.

¶8 At sentencing, the prosecutor referred to this case as a "drugged driving" case and discussed the number of fatalities caused. In response, defense counsel highlighted the strict liability nature of Swadner's offenses and she noted that the concentration of THC detected in Swadner's blood was low, which "suggest[ed] that this isn't an influence case, this isn't an intoxication case." Defense counsel also asserted that Swadner "probably wasn't under the influence of the drug with regard to his behavior. I suspect the driving force here is he was under the influence of being 17." Defense counsel stressed that Swadner's age, immaturity, and inexperience in driving contributed to his criminal conduct.

¶9 The circuit court considered the proper sentencing factors, including the gravity of the offenses, Swadner's character, and the need to protect the public. *See State v. Gallion*, 2004 WI 42, ¶¶37-49, 270 Wis. 2d 535, 678 N.W.2d 197. The court noted the strict liability nature of the offenses, but it also recognized that the legislature considered driving after ingesting drugs a "serious matter and there needed to be a deterrent for it." When addressing Swadner's character, the court

4

recognized that Swadner was seventeen at the time of the crash and that there was evidence suggesting people that young "may act impulsively, they may not always use the best judgment." The court added: "I'll take that into consideration. He was 17." The court imposed a combination of consecutive and concurrent sentences for Swadner's convictions totaling fifteen years' initial confinement and thirty years' extended supervision.

¶10    Swadner filed a postconviction motion arguing, as relevant here, that the circuit court erroneously exercised its sentencing discretion by: (1) viewing him more culpable based on a conclusion that he was impaired at the time of the crash; and (2) "discounting the importance of Mr. Swadner's youth and its attendant characteristics." In the alternative, he claimed that he was entitled to sentence modification based on new factors. Specifically, Swadner presented studies on juvenile brain development and the findings of his expert witness, Dr. James O'Donnell, who opined that: (1) impairment by marijuana cannot be determined by blood THC levels alone; (2) THC rapidly absorbs and dissipates after smoking; and (3) there was "no basis to conclude that [Swadner] was under the influence of or impaired by THC at the time of the accident or that the accident was caused by drug-impaired driving."

¶11    After a hearing, the circuit court denied Swadner's postconviction motion, noting that the court never found that Swadner was impaired at the time of the crash when sentencing him, and that it understood the law provided for strict liability when driving with a detectable amount of a controlled substance. The court therefore rejected Swadner's argument that information concerning lack of impairment constituted a new factor warranting sentence modification, explaining, "I do not find this issue as … a new factor, it was something the [c]ourt was … aware of." The court further noted that it was aware of the juvenile brain studies

and that it considered Swadner's age at sentencing, thus concluding Swadner's youth was not a new factor. The court ultimately determined that it had properly balanced the sentencing factors. Swadner now appeals.

## DISCUSSION

### I. Sentencing Discretion

¶12 Sentencing is committed to the circuit court's discretion. *See State v. Echols*, 175 Wis. 2d 653, 681, 499 N.W.2d 631 (1993). In reviewing a sentence, this court is limited to determining whether there was an erroneous exercise of discretion. *See id.* There is strong public policy against interfering with a circuit court's sentencing discretion, and we presume that the court acted reasonably in sentencing. *Id.* at 681-82. Thus, if the record contains evidence that the circuit court properly exercised its discretion, we must affirm. *State v. Cooper*, 117 Wis. 2d 30, 40, 344 N.W.2d 194 (Ct. App. 1983). Proper sentencing discretion is demonstrated if the record shows that the circuit court "examined the facts and stated its reasons for the sentence imposed, 'using a demonstrated rational process.'" *State v. Spears*, 147 Wis. 2d 429, 447, 433 N.W.2d 595 (Ct. App. 1988) (citation omitted).

¶13 The weight to be given to each of these factors is within the discretion of the sentencing court, and the sentence may be based on any or all of the three primary factors after all relevant factors have been considered. *See State v. Wickstrom*, 118 Wis. 2d 339, 355, 348 N.W.2d 183 (Ct. App. 1984). When imposing a sentence, the court must "by reference to the relevant facts and factors, explain how the sentence's component parts promote the sentencing objectives." *Gallion*, 270 Wis. 2d 535, ¶46.

¶14 Here, Swadner acknowledges that the circuit court considered all of the appropriate sentencing factors required by *Gallion*. He nevertheless argues that the court erroneously exercised its discretion in balancing and weighing those factors. He first contends that the court put too much weight on punishment, and thus imposed a longer sentence than necessary based on a culpability determination grounded on an unsupported conclusion that Swadner was impaired by THC. Specifically, Swadner contends the juxtaposition between the court's comments about "drugged driving" and the need for deterrence, and the tenor of the court's statements taken as a whole, show that the court improperly considered Swadner's impairment as an aggravating factor.

¶15 We are not persuaded. The circuit court did not find that Swadner was impaired by drugs when he crashed. In fact, during the sentencing hearing, the court explained that the legislature enacted strict liability offenses to clarify that the very act of operating a motor vehicle with the presence of illegal drugs, was, in and of itself, a serious matter regardless of the driver's impairment. Additionally, the court referenced cited statistics to fatal automobile crashes and drug use, and recognized that "the amount of accidents or crashes that are perhaps occurring because people have a controlled substance in their systems, it's an alarming amount of tragedy and death because of this." In context, the court's comments reflect that it faulted Swadner not because it believed he was impaired at the time of the crash, but because he made the decision to put himself and others at risk by driving some time after ingesting THC.

¶16 Swadner further contends that the circuit court erroneously exercised its discretion by placing insufficient weight on his age and the associated characteristics of juvenile brain development in determining the appropriate sentence. Although Swadner acknowledges that the court noted his youth and

stated that it considered his age when sentencing him, he argues that the court's consideration was obscured by its concentration on Swadner's use of marijuana. In support of this claim, Swadner cites several Supreme Court cases recognizing that a juvenile's youthful traits of "transient rashness, proclivity for risk, and inability to assess consequences" are important in the criminal justice context. *See, e.g.*, *Miller v. Alabama*, 567 U.S. 460, 472 (2012). These youthful traits lessen a juvenile's "moral culpability," diminish the effectiveness of (and thus the rationale for) deterrence, and increase the probability that, with time and further neurological development, the juvenile's "deficiencies will be reformed." *Graham v. Florida*, 560 U.S. 48, 68-69 (2010) (quoting *Roper v. Simmons*, 543 U.S. 551, 570 (2005)). Swadner claims the court failed to consider these factors or the negative effects of prolonged incarceration on someone of Swadner's age, which would likely inhibit his rehabilitation.

¶17 Swadner further contends the circuit court's reliance on *State v. Davis*, 2005 WI App 98, 281 Wis. 2d 118, 698 N.W.2d 823, was misplaced. There, we noted that youth "does not automatically outweigh all of the other sentencing factors." *Id.*, ¶19. Swadner asserts that the *Davis* court's discussion of youth was "based on its reading of precedent predating *Roper* and its progeny." He asserts that subsequent Supreme Court cases clarify that "children are constitutionally different from adults for purposes of sentencing." *See Miller*, 567 U.S. at 471. In other words, because juveniles have diminished culpability and greater prospects for reform, "they are less deserving of the most severe punishments." *Id.* (citation omitted).

¶18 Swadner acknowledges that the cases he relies upon involve the imposition of capital punishment or life sentences, and his case involves neither. He nevertheless claims that the "fundamental rationale of the [c]ourt's rulings in

those cases is that, when it comes to criminal sentencing, juveniles are different from adults because of their neurologically diminished capability to understand consequences and their potential to mature and change." He contends that rationale applies to any sentencing scheme because the brain research is the same for all youths, not just those who have committed serious offenses, and sentencing courts consider the same factors in all cases.

¶19 Again, we are not persuaded. As the State correctly notes, Swadner seems to suggest that—"holding all other sentencing considerations equal—a circuit court must impose a more lenient sentence for a 17-year-old defendant than a 26-year-old defendant convicted of the same crime." Swadner, however, was indisputably an adult for criminal prosecution purposes, not a juvenile. *See* WIS. STAT. § 938.02(1), (10m).

¶20 Additionally, Swadner's claim plainly defies Wisconsin law. Although Swadner may have felt he deserved a sentence reduction due to his age, we have previously held, in no ambiguous terms, that a defendant's "youth factor does not automatically outweigh all of the other sentencing factors." *See **Davis***, 281 Wis. 2d 118, ¶19. Swadner's cited cases may carry greater weight if his case involved capital punishment or life without parole. The court here sentenced Swadner to fifteen years' imprisonment—less than one-third of the maximum sentence he faced for his four convictions—thereby assuring his release from prison before he reaches the age of thirty-four. The court appropriately considered Swadner's youth with the other sentencing factors, and there is thus no basis for us to conclude that the court erroneously exercised its discretion.

## II. Sentence Modification

¶21    Swadner alternatively argues that new factors exist warranting the modification of his sentences.  A circuit court may modify a defendant's sentence upon a showing of a new factor.  *See State v. Harbor*, 2011 WI 28, ¶35, 333 Wis. 2d 53, 797 N.W.2d 828.  The defendant has the burden to demonstrate by clear and convincing evidence that a new factor exists.  *Id.*, ¶36.  A new factor is "a fact or set of facts highly relevant to the imposition of sentence, but not known to the [circuit court] at the time of original sentencing, either because it was not then in existence or because … it was unknowingly overlooked by all of the parties."  *Id.*, ¶40 (citation omitted).  Whether a fact or set of facts constitutes a new factor is a question of law we decide independently.  *Id.*, ¶33.  If the facts do not constitute a new factor as a matter of law, a court need not go further in the analysis.  *Id.*, ¶38.  The existence of a new factor, however, does not automatically entitle a defendant to sentence modification.  *Id.*, ¶37.  If a new factor is present, the circuit court, in the exercise of its discretion, determines whether sentence modification is justified based on the new factor.  *Id.*

¶22    Here, Swadner claims that two new factors justify sentence modification: (1) information concerning the relationship between THC metabolite concentrations and impairment; and (2) information regarding brain development in juveniles and young adults.  Based on the record, we conclude these are not new factors.

¶23    As noted above, the circuit court never found that Swadner was impaired.  As such, an expert's opinion that there was no basis to conclude Swadner was impaired at the time of the crash does not qualify as a new

sentencing factor because it was not "highly relevant to the imposition of sentence." *See id.*, ¶40.

¶24 Additionally, the circuit court explicitly acknowledged Swadner's young age and the impulsivity and poor judgment associated with that age during sentencing. At the postconviction motion hearing, the court also indicated that it was aware at the time of sentencing of the juvenile brain development studies and the related Supreme Court cases that Swadner cited in support of his motion for sentence modification. Because that information was known to the court at the time of sentencing, it does not constitute a new factor supporting sentence modification. *See id.* Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.