# COURT OF APPEALS
## DECISION
## DATED AND FILED

## July 29, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP812-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2015CF713

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ADAM MICHAEL CHRISTOPHER,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Brown County: THOMAS J. WALSH, Judge. *Affirmed.*

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.    Adam Michael Christopher, pro se, appeals from a judgment convicting him of multiple counts of possession of child pornography

and from an order denying his postconviction motion. Christopher argues that the circuit court erroneously exercised its sentencing discretion by failing to adequately explain its reasons for imposing a consecutive, rather than concurrent, sentence on a particular count. Christopher also asserts that he is entitled to resentencing because the court relied on inaccurate information at sentencing. We reject Christopher's arguments and affirm.

## BACKGROUND

¶2　In May 2015, the State charged Christopher with eleven counts of possession of child pornography, based on videos found on his laptop. Each of those counts carried a mandatory minimum term of three years' initial confinement. *See* WIS. STAT. § 939.617(1) (2015-16).[1] Pursuant to a plea agreement, Christopher entered guilty pleas to all eleven charges. In exchange for Christopher's pleas, the State agreed to cap its total sentence recommendation at ten years' initial confinement followed by ten years' extended supervision.

¶3　The circuit court ordered a presentence investigation report (PSI), which recommended concurrent sentences of three years' initial confinement followed by three years' extended supervision on Counts 1 through 10 and a consecutive sentence of three years' initial confinement followed by three years' extended supervision on Count 11. At sentencing, consistent with the plea agreement, the State recommended a total of ten years' initial confinement followed by ten years' extended supervision. The defense, in turn, asked the court

---

[1] All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

to impose "the minimum period of initial confinement" on each count—i.e., three years—and to make all of Christopher's sentences concurrent with one another.

¶4 The circuit court sentenced Christopher to four years' initial confinement followed by four years' extended supervision on Count 1. On Counts 2 through 10, the court imposed sentences of three years' initial confinement followed by three years' extended supervision, concurrent with each other and with Christopher's sentence on Count 1. On Count 11, the court sentenced Christopher to four years' initial confinement followed by four years' extended supervision, consecutive to his sentences on the other counts. Thus, in the aggregate, Christopher's sentences totaled eight years' initial confinement followed by eight years' extended supervision.

¶5 Christopher's appointed appellate attorney filed a no-merit report, but counsel later voluntarily withdrew the no-merit report after this court identified a potential issue of arguable merit regarding multiplicity. Christopher then filed a postconviction motion seeking to vacate his conviction on Count 11, asserting that Counts 9 and 11 were multiplicitous because they were based on two copies of the same video. Christopher asserted that vacating his conviction on Count 11 would result in him being "released immediately to extended supervision, which would continue until 2024."

¶6 The circuit court agreed with Christopher that Counts 9 and 11 were multiplicitous; however, it declined to vacate his conviction on Count 11. Instead, the court determined that it would be more appropriate to vacate Christopher's conviction on Count 9 because doing so would allow "[b]oth parties [to] retain the benefit of the plea agreement" and because "the remaining convictions and

sentences do not disturb the Court's sentencing goals." Christopher did not appeal the court's decision to vacate Count 9 rather than Count 11.

¶7 Thereafter, Christopher filed a postconviction motion for sentence modification or, in the alternative, resentencing. Christopher argued that the circuit court had erroneously exercised its sentencing discretion by making his sentence on Count 11 consecutive to his sentences on Counts 1 through 10. He also argued that the court had relied on inaccurate information at sentencing. The circuit court denied Christopher's motion in a written order, and this appeal follows.

## DISCUSSION

### I. Sentencing Discretion

¶8 Sentencing decisions are committed to the circuit court's discretion, and our review on appeal is limited to determining whether the court erroneously exercised its discretion. *State v. Gallion*, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197. "[S]entencing decisions of the circuit court are generally afforded a strong presumption of reasonability because the circuit court is best suited to consider the relevant factors and demeanor of the convicted defendant." *Id.*, ¶18 (citation omitted). "Appellate judges should not substitute their preference for a sentence merely because, had they been in the trial judge's position, they would have meted out a different sentence." *Id.* (citation omitted). Accordingly, a defendant bears a "heavy burden" in attempting to show that a circuit court erroneously exercised its sentencing discretion. *State v. Harris*, 2010 WI 79, ¶30, 326 Wis. 2d 685, 786 N.W.2d 409.

¶9 A proper exercise of sentencing discretion requires a circuit court to consider three primary factors: the gravity of the offense, the defendant's character, and the need to protect the public. *Id.*, ¶28. Additional relevant factors include the defendant's criminal record and any history of undesirable behavior patterns; the defendant's personality, character, and social traits; any recommendation in a PSI; the vicious and aggravated nature of the crime; the defendant's degree of culpability; the defendant's demeanor at trial; the defendant's age, educational background and employment record; the defendant's remorse, repentance and cooperativeness; the defendant's need for close rehabilitative control; the rights of the public; and the length of pretrial detention. *Id.* Sentencing courts have "considerable discretion" in determining the weight given to each sentencing factor. *Id.*

¶10 "In exercising discretion, sentencing courts must individualize the sentence to the defendant based on the facts of the case by identifying the most relevant factors and explaining how the sentence imposed furthers the sentencing objectives." *Id.*, ¶29. Proper sentencing objectives include, but are not limited to, "the protection of the community, punishment of the defendant, rehabilitation of the defendant, and deterrence to others." *Gallion*, 270 Wis. 2d 535, ¶40. Ultimately, a sentence should "call for the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant." *Id.*, ¶44 (citation omitted).

¶11 On appeal, Christopher renews his argument that the circuit court erroneously exercised its sentencing discretion by making his sentence on Count 11 consecutive to his sentences on the remaining counts. A circuit court "is permitted wide discretion in determining whether to impose a concurrent or

consecutive sentence." ***State v. Davis***, 2005 WI App 98, ¶27, 281 Wis. 2d 118, 698 N.W.2d 823. A court "properly exercises its discretion in imposing consecutive or concurrent sentences by considering the same factors as it applies in determining sentence length." ***State v. Berggren***, 2009 WI App 82, ¶46, 320 Wis. 2d 209, 769 N.W.2d 110. Notably, however, a court is not required to "state separately why it chose a consecutive rather than a concurrent sentence." ***Id.***, ¶45.

¶12 Here, the sentencing transcript reflects that the circuit court did not erroneously exercise its discretion by imposing a consecutive sentence on Count 11. The court began its sentencing remarks by correctly noting that it was required to consider "the gravity of the offense, the character of the defendant, the need to protect the public, as well as other aggravating and mitigating circumstances, including rehabilitative needs[ and] punishment."

¶13 The circuit court then addressed Christopher's character, noting his relatively young age and the fact that his past criminal record was "virtually nonexistent." The court also noted that Christopher had obtained a GED and had some college credits. In addition, the court observed that Christopher had worked for a reputable employer and had been "promoted up through the ranks periodically at that company, which also sp[oke] well of his character." The court also considered Christopher's upbringing and letters of support submitted by his family members. Additionally, the court considered a doctor's report that had been submitted by the defense, which opined that Christopher "doesn't appear to be an individual in need of incarceration in order to avoid substantial risk to the community."

¶14 The circuit court then considered the gravity of the offenses, however, and noted that "we can speak of good character traits, we can speak of

6

poor character traits, and then we can speak of just terrible offenses, and these types of offenses are terrible offenses." The court emphasized the effect of child pornography offenses on the victims depicted in the videos, noting that those victims are "being exploited day in and day out as … the images of them are flashed through the Internet." The court stated that "the public demands protection from things like that."

¶15   The circuit court then expressed concern that people who view child pornography have a compulsion to do so, "particularly when no help is being sought or received." While the court acknowledged Christopher's claim that his alcohol consumption had lowered his inhibitions and contributed to his decision to seek out child pornography, the court did not accept Christopher's alcohol use as a full explanation for his conduct, stating instead that there is "something underlying who Mr. Christopher is that draws him to this type of activity."

¶16   The circuit court continued, "And in reading the [PSI], the comment that the defendant, Mr. Christopher, clearly has a deviant sexual interest in children, is a concern to this Court, and it's a concern that has got to be addressed before he's able to be in our community again." The court noted that, when speaking to the PSI author, Christopher had described having "an attraction to petite or thin body type[s] versus an attraction to children." The court stated, however, that

> [t]he things that he was viewing also—and the state
> mentioned it in this report—went beyond though just
> simply viewing children in pornographic situations but,
> rather, included bestiality and teen rape.[2]  All of those

---

[2] In the next section of this opinion, we address and reject Christopher's argument that the circuit court relied on inaccurate information when it referred to him having an interest in "teen rape."

7

things go even beyond the issue of pornography, beyond child pornography. It gets into a deeper level.

¶17 Addressing the protection of the public and Christopher's rehabilitative needs, the circuit court then stated that Christopher's positive character traits do not "balance out" his viewing of child pornography, which "needs to be addressed for our community." The court continued:

> [I]t heavily weighs on me, the severity of … these offenses—there's 11 counts—and the public needs to be protected from people who are interested in this type of activity, that being interested in seeing children engaged in bestiality or teen rape or again child pornography, and the public demands protection from that. So that I see a strong need for rehabilitative needs in this case. There is a huge need for that so that the public can be satisfied these issues are getting addressed. There is a need for punishment because again this is—these are very serious offenses.

¶18 Finally, the circuit court summarized the sentencing recommendations made by the parties and the PSI author. In particular, the court rejected Christopher's argument that the PSI author may not have intended to recommend a consecutive sentence on Count 11.

¶19 When considered in their entirety, the circuit court's sentencing remarks show that the court provided a thorough explanation—tied to relevant and appropriate sentencing factors—for its decision to impose sentences totaling eight years' initial confinement followed by eight years' extended supervision.[3]

---

[3] We note that, pursuant to statute, the circuit court could have imposed consecutive sentences of 15 years' initial confinement followed by 10 years' extended supervision on each of the child pornography counts, making Christopher's total exposure for the ten counts for which he was ultimately convicted 150 years' initial confinement followed by 100 years' extended supervision. *See* WIS. STAT. §§ 939.50(3)(d), 948.12(3)(a), 973.01(2)(b)4. We also observe that the aggregate sentence that the court imposed was less than the State's total recommendation of ten years' initial confinement followed by ten years' extended supervision.

Christopher's sentences were clearly motivated by the seriousness of the offenses, the need to protect the public, and the court's assessment of Christopher's rehabilitative needs. The court's sentencing remarks adequately justified the overall length Christopher's sentences, and, as noted above, the court was not required to provide a separate explanation for its decision to impose a consecutive sentence on Count 11. *See* ***Berggren***, 320 Wis. 2d 209, ¶¶45-46.

¶20 In support of his argument that the circuit court erroneously exercised its discretion by imposing a consecutive sentence on Count 11, Christopher asserts that while child pornography cases "almost always involve multiple units—sometimes thousands[—]it is customary for Wisconsin courts to sentence such counts concurrently regardless of the quantity of material, particularly when the counts are all part of the same course of conduct." Christopher cites no legal authority in support of this proposition. Regardless, as the State correctly notes, the circuit court was required to fashion an individually tailored sentence for Christopher. *See* ***Gallion***, 270 Wis. 2d 535, ¶48 ("Individualized sentencing … has long been a cornerstone to Wisconsin's criminal justice jurisprudence."). The fact that concurrent sentences have been imposed in other cases involving multiple convictions for possession of child pornography does not, in and of itself, show that the court in this case erroneously exercised its discretion by imposing a consecutive sentence on Count 11.[4]

---

[4] For the same reason, Christopher's assertion that "many child pornography defendants possess hundreds or thousands of files, collected over an extended period of time, and still get sentenced to 3-4 years imprisonment" also fails to show that the circuit court erroneously exercised its discretion when imposing sentence in this specific case.

¶21    Christopher argues that the circuit court failed to perform an "individualized analysis" because "[e]very aggravating factor listed by the court had no specific relation to Christopher, but instead applie[s] to every child pornography offender." We can infer from the court's sentencing remarks, however, that the court believed the protection of the public required a lengthy sentence in this specific case so that Christopher would receive treatment in a confined setting before being released. In reaching that conclusion, the court discounted Christopher's claim that he had accessed child pornography due to his alcohol use, concluding instead that there is "something underlying who Mr. Christopher is that draws him to this type of activity." The court also rejected Christopher's assertion that he was merely attracted to "petite or thin body type[s]," stating that his interests "went beyond … just simply viewing children in pornographic situations." Under these circumstances, Christopher's assertion that the court failed to impose an individualized sentence is unavailing.[5]

¶22    Christopher next argues that the circuit court "gave no indication as to how an eight-year, consecutive sentence" would protect the public. He then cites various documents contained in the appendix to his appellate brief in support of the assertion that "recidivism rates for sex offenders are the lowest of any other group, and child pornography rates are among the lowest of the low." We note, however, that there is nothing in the record to suggest that Christopher presented

---

[5] In addition, we reject Christopher's assertion that the circuit court's sentencing remarks show that the court "intends to apply long sentences to every child pornography defendant it sentences—regardless of the individual facts of the case." As discussed above, the court applied proper sentencing factors to the facts of Christopher's case. Contrary to Christopher's assertion, nothing about the court's sentencing remarks suggests "a preconceived policy of sentencing that is 'closed to individual mitigating factors.'" *See State v. Ogden*, 199 Wis. 2d 566, 571, 544 N.W.2d 574 (1996) (citation omitted).

these documents to the circuit court at sentencing. *See **State v. Rogers***, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995) ("We will not … blindside trial courts with reversals based on theories which did not originate in their forum."). Given the information available to the court at the time of sentencing, the court could reasonably conclude that the sentences it imposed were necessary to enhance public protection by ensuring that Christopher received adequate treatment before being released from prison.[6]

¶23 Finally, Christopher argues that the circuit court's decision to impose a consecutive sentence on Count 11 "was not a harmless one, as it kept Christopher from being eligible for an earlier release via the Wisconsin Substance Abuse Program." *See **State v. Gramza***, 2020 WI App 81, ¶26, 395 Wis. 2d 215, 952 N.W.2d 836 (holding that a defendant who is subject to a mandatory minimum sentence is required to serve the full mandatory minimum term before being released upon completion of the Substance Abuse Program). Be that as it may, it does not establish that the court erroneously exercised its discretion by imposing a consecutive sentence on Count 11. Again, the court implicitly determined that the sentences imposed were necessary to protect the public by ensuring that Christopher received adequate treatment in prison before being released. For all of the reasons explained above, the court did not erroneously exercise its discretion in that regard.

---

[6] Relatedly, Christopher asserts that the circuit court's implicit reasoning that a longer aggregate sentence would ensure that he received adequate treatment in prison was flawed. He contends, "[S]ince Wisconsin sex offender treatment does not begin until the end of an offender's sentence, a longer sentence means that an offender must wait *longer* for treatment to begin if he receives a longer sentence—he must remain mentally 'broken' for longer." Christopher cites no authority in support of this proposition. Additionally, we note that he did not raise this argument at sentencing. *See **State v. Rogers***, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995).

## II. Inaccurate Information

¶24 Christopher also renews his argument on appeal that he was sentenced based on inaccurate information. "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. Whether a defendant has been denied this right is a constitutional issue that this court reviews de novo. *Id.*

¶25 A defendant seeking resentencing based on inaccurate information must show both that the information in question was inaccurate and that the circuit court actually relied on the inaccurate information when imposing sentence. *Id.*, ¶26. If the defendant makes this showing, the burden shifts to the State to prove that the error was harmless. *Id.* Here, we conclude Christopher has failed his initial burden because he has not shown that the information in question was inaccurate—that is, that the information was "materially untrue" or "extensively and materially false."[7] *See State v. Travis*, 2013 WI 38, ¶¶17-18, 347 Wis. 2d 142, 832 N.W.2d 491.

¶26 Christopher argues that the circuit court relied on inaccurate information when it stated: "The things that he was viewing also—and the state mentioned it in this report—went beyond though just simply viewing children in pornographic situations but, rather, included bestiality and teen rape." The court

---

[7] Because we reject Christopher's inaccurate information claim on this basis, we need not address the State's alternative argument that Christopher forfeited the claim by failing to object to or correct the allegedly inaccurate information at sentencing. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (explaining that the court of appeals need not address all issues raised by the parties if one is dispositive).

further stated that "the public needs to be protected from people who are interested in this type of activity, that being interested in seeing children engaged in bestiality or teen rape or again child pornography." Christopher contends that these statements were inaccurate because there is no evidence that he ever downloaded any videos depicting "teen rape."

¶27 Christopher concedes, however, that he *searched for* pornography depicting "teen rape." The PSI author cited those searches as evidence that Christopher "clearly has a deviant sexual interest in children."[8] The PSI author further opined that it was "imperative" that Christopher "obtain treatment in a confined setting to properly address his deviant sexual interest in children." Like the PSI author, the circuit court cited Christopher's interest in teen rape as evidence of a "deviant sexual interest in children" that necessitated treatment before Christopher could safely be released to the public. Based on Christopher's admission to searching for "teen rape" videos, the court's belief that Christopher had an interest in teen rape was not inaccurate.

¶28 Christopher asserts that, although he "entered the words teen rape into the search box," he "*chose not to download* anything from the results." We agree with the State, however, that "[t]he minor leap between searching for and downloading [videos depicting teen rape]—in a situation where Christopher

---

[8] Christopher claims that the PSI author, who was "a probation officer, not a psychologist," had no basis to opine that he has "a deviant sexual interest in children." However, Christopher has admitted downloading child pornography, and he concedes that he searched for "teen rape." In addition, the complaint and PSI both recounted that two of the videos Christopher downloaded showed acts of bestiality involving children. The PSI also noted that, in addition to the 10 videos that formed the basis for the charges against Christopher, a detective "located an additional 23 videos of child pornography" on Christopher's laptop. Under these circumstances, there was an ample basis for the PSI author's assertion that Christopher has "a deviant sexual interest in children."

admitted to possessing 10 [child sex abuse] videos—is insignificant in this context." Under these circumstances, Christopher has failed to show that the circuit court's statements about his interest in teen rape were "materially untrue" or "extensively and materially false." *See **Travis***, 347 Wis. 2d 142, ¶¶17-18.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2023-24).